957 P.2d 741 (1998)
135 Wash.2d 369
STATE of Washington, Respondent,
v.
Orson H. LEE and Brian Yates, Petitioners.
No. 64401-2.
Supreme Court of Washington, En Banc.
June 18, 1998.
*743 Gene Grantham, Seattle, amicus curiae on Behalf of American Civil Liberties Union.
Jonathan T. Stier, Nielsen & Broman, Eric Nielsen, Seattle-King County Public Defender Ass'n, Neil Fox, Seattle, for petitioners.
Norm Maleng, King County Prosecutor, Peter Meyers, Deputy County Prosecutor, for respondent.
*742 SMITH, Justice.
Petitioners Brian Edward Yates and Orson Henry Lee each seek review of a decision of the Court of Appeals, Division I, which affirmed decisions by the King County Superior Court concluding RCW 9A.46.110, the statute defining the crime of "stalking," is not unconstitutionally vague or overbroad and does not violate constitutional due process. We granted review of the consolidated cases. We affirm.

QUESTIONS PRESENTED
The questions presented in this case are (1) whether there is sufficient evidence in each case to support the findings of "guilty;" (2) whether the stalking statute,[1] former RCW 9A.46.110, is unconstitutionally overbroad; (3) whether the stalking statute is unconstitutionally vague; and (4) whether the stalking statute violates constitutional due process.

STATEMENT OF FACTS
Following convictions in separate trials before the King County Juvenile Court in the Lee case and before the Shoreline District Court, with affirmance by the King County Superior Court, in the Yates case, the Court of Appeals, Division I, consolidated the appeals and affirmed the convictions in State v. Orson H. Lee and State v. Brian Yates.[2]

BRIAN EDWARD YATES
Petitioner Brian Edward Yates' former girlfriend, Ms. Barbara Egan,[3] lived with him for a year. She moved out of his residence on September 1992 because he became physically abusive and assaulted her.[4]
*744 On January 5, 1993, Petitioner Yates came to Ms. Egan's apartment in Mountlake Terrace and demanded return of a video cassette recorder (VCR) he had given her for Christmas. She told him she wanted nothing to do with him and asked him to leave. Petitioner pushed her to the floor so he could enter her apartment and get the VCR. Ms. Egan got up and called the police. Petitioner was arrested, transported to the Lynnwood Police Department and charged with fourth degree assault and burglary.[5] He was released on bail before midnight.[6]
On January 6, 1993, Ms. Egan observed Petitioner Yates watching her at her apartment complex and at her child's daycare center in Lynnwood.[7] At approximately 4:00 PM Petitioner telephoned Ms. Egan. She informed him she had a restraining order against him.[8] She told him not to call her, not to mail her anything, and to stay at least 100 yards away from her. Petitioner telephoned Ms. Egan a second time at 4:15 PM, and again at 6:00 PM.[9]
On January 7, 1993, Ms. Egan took her young son to the daycare center at 9:30 AM. Petitioner Yates was sitting in his car outside the center watching her as she left for work at 9:45 AM.[10]
On January 11, 1993, Ms. Egan and her friend, Kristina Cook, left the Texaco station at Northeast Bothell Way and 67th Street Northeast and observed Petitioner Yates following them as they headed for a Denny's restaurant. He passed by the restaurant three times while they were there. When they no longer saw him, they left for Ms. Cook's house at 3:00 PM. At 4:00 PM Petitioner drove by Ms. Cook's house. Ms. Egan called the Snohomish County Police Department.[11]
On January 12, 1993, Petitioner Yates in his automobile followed Ms. Egan on her way home from work.[12] On January 13, 1993, Ms. Egan and a friend, Kathryn Peaballs, noticed Petitioner in his automobile staring at them from a Texaco service station in Kenmore. Petitioner followed them to Denny's Restaurant and parked his vehicle in an adjacent parking lot. Ms. Egan and Ms. Peaballs entered Denny's to make a telephone call. Petitioner Yates left when Ms. Egan pointed him out to a restaurant employee.[13]
On March 17, 1993, Ms. Egan called the Mountlake Terrace Police Department to report Petitioner Yates made contact with her at her apartment. She reported Petitioner had been telephoning her at her apartment, had been following her everywhere she went, followed her to the store and back to her apartment, and followed her to a lawyer's office.[14]
On March 23, 1993, Ms. Egan noticed Petitioner Yates following her as she was driving her automobile. She attempted to lose him by driving north on the freeway, Interstate 5. She thought she had lost him and proceeded to Lynnwood Square. She waited for a short time and then drove south through the Lynnwood Square parking lot. She then saw Petitioner drive toward her. He waved for her to stop. Ms. Egan drove to a 7-11 parking lot and called the Lynnwood Police Department. Petitioner pulled into a nearby Chevron service station and waited a short *745 while, but left before the police arrived. Ms. Egan reported to the officers that Petitioner Yates "follows me everywhere I go."[15]
On March 23, 1993, Ms. Egan obtained a temporary order for protection from domestic violence, Shoreline District Court # XX-X-XXXXX-X, ordering Petitioner Yates to have no contact with her and her child and directing him to stay away from her apartment and from her child's daycare center.[16]
On April 2, 1993, Ms. Egan reported to the King County Police, Kenmore Station, that Petitioner Yates followed her all the way from Mountlake Terrace to her child's daycare center in Lynnwood. After she dropped her son off, Petitioner followed her to the Bothell exit on Interstate 405. Petitioner took the same exit as Ms. Egan, and pulled up next to her at a traffic light, honking his horn and shouting "Can't we have a cup of coffee and talk?" Ms. Egan was frightened and drove to the King County Police Station at Kenmore. Petitioner followed her, but kept going when she pulled into the police parking lot. The reporting officer described Ms. Egan as "visibly shaken."[17]
On April 6, 1993, Ms. Egan was granted an extension on her temporary order for protection from domestic violence.[18] This order was served on Petitioner Yates April 6, 1993 by Mountlake Terrace Police Detective [FNU] Hoalland.[19]
On April 7, 1993, Petitioner Yates contacted Ms. Egan at her babysitter's house and followed her and her friend, Kristina Cook, to an Alcoholics Anonymous (AA) meeting. Petitioner several times looked into the windows of the building where the AA meeting was under way. Petitioner drove by Ms. Cook's house many times.
On April 11, 1993, Ms. Egan saw Petitioner Yates' automobile parked in her apartment parking lot. She saw him leave the vehicle and walk towards her apartment complex. She called the Mountlake Terrace Police Department. Officer [FNU] Sheets responded to the call. He parked his vehicle behind Petitioner's and observed Petitioner walking from the apartment complex towards him. Officer Sheets described Petitioner's conduct as follows:
At first he was just slowly walking towards me and did not see me, but when he did see me he immediately started to run west through the lot. I drove my car up and caught up to him. I asked him who he was and he said, "I'm Brian," and then I asked him what he was doing and he said, "Just jogging from my car." I then advised him that I had been over by his car for the past 5-10 minutes and had not seen him, in fact I just saw him come from the apt. complex.[20]
Officer Sheets then arrested Petitioner Yates for violating the April 6, 1996 temporary restraining order.[21]
On April 19, 1993, Ms. Egan and Ms. Cook saw Petitioner Yates in his vehicle behind some bushes near Ms. Cook's residence. They drove up to him. He said "I'm not doing anything wrong" and left. Ms. Egan and Ms. Cook returned to Ms. Cook's residence at approximately 2:30 PM and saw Petitioner driving down the street toward them. He drove by the house a few minutes later.[22]
On April 20, 1993, Court Commissioner Arden J. Bedle, Snohomish County Superior *746 Court, issued a permanent order for protection against Petitioner Yates.[23]
On April 24, 1993, Petitioner Yates telephoned Ms. Cook at her home. He told her she should not assist Ms. Egan in pursuing his violations of court orders.[24] On April 27, 1994 the Honorable Douglas J. Smith, Shoreline District Court, signed an order prohibiting contact (domestic violence):[25]
It is hereby ordered, that pursuant to RCW 10.99.040, the defendant shall not stalk nor have any contact, directly or indirectly, in person, in writing or by telephone, personally or through any other person, with Barbara Egan (DOB 12-25-67), and Chris Cook (DOB 4-5-65) and Christine Jones (DOB 6-1-62), until further order of this court.
On February 2, 1993, Petitioner Brian Yates was charged by the King County Prosecuting Attorney in the Shoreline District Court with the offense of "stalking" in violation of RCW 9A.46.110, the complaint (reading in confusing grammatical form):[26]
That the defendant in King County, Washington, on or about 1/13/93 without lawful authority, intentionally and repeatedly follows [sic] the victim to the victim's home, school, place of employment, business or any other location, or follows [sic] the victim while he/she is in transit between locations, and the victim is intimidated, harasses [sic] or placed in fear that the stalker intends to injure the person being followed or injure another person, and the stalker did know or reasonably should know that the victim being followed is frightened, intimidated or harassed; or did intend to frighten, intimidate or harass the victim.[27]
Although the syntax is confusing, the complaint presumably was intended to be written in the language of the "stalking" statute, former RCW 9A.46.110,[28] which in 1993 read as follows:
(1) A person commits the crime of stalking if, without lawful authority and under circumstances not amounting to a felony attempt of another crime:
(a) He or she intentionally and repeatedly follows another person to that person's home, school, place of employment, business, or any other location, or follows the person while the person is in transit between locations; and
(b) The person being followed is intimidated, harassed, or placed in fear that the stalker intends to injure the person or property of the person being followed or of another person. The feeling of fear, intimidation, or harassment must be one that a reasonable person in the same situation would experience under all the circumstances; and
(c) The stalker either:
(i) Intends to frighten, intimidate, or harass the person being followed; or
(ii) Knows or reasonably should know that the person being followed is afraid, intimidated, or harassed even if the stalker did not intend to place the person in fear or intimidate or harass the person.
(2)(a) It is not a defense to the crime of stalking under subsection (1)(c)(i) of this section that the stalker was not given actual notice that the person being followed did not want the stalker to contact or follow the person; and
(b) It is not a defense to the crime of stalking under subsections (1)(c)(ii) of this section that the stalker did not intend to *747 frighten, intimidate, or harass the person being followed.
(3) It shall be a defense to the crime of stalking that the defendant is a licensed private detective acting within the capacity of his or her license as provided by chapter 18.165 RCW.
(4) Attempts to contact or follow the person after being given actual notice that the person does not want to be contacted or followed constitutes prima facie evidence that the stalker intends to intimidate or harass the person.
(5) A person who stalks another person is guilty of a gross misdemeanor except that the person is guilty of a class C felony if any of the following applies: (a) The stalker has previously been convicted in this state or any other state of any crime of harassment, as defined in RCW 9A.46.060, of the same victim or members of the victim's family or household or any person specifically named in a no-contact order or no-harassment order; (b) the person violates a court order issued pursuant to RCW 9A.46.040 protecting the person being stalked; or (c) the stalker has previously been convicted of a gross misdemeanor or felony stalking offense under this section for stalking another person.
On June 17, 1993, Petitioner Yates filed a motion to dismiss the complaint, challenging the constitutionality of the stalking statute as being overbroad.[29] On July 28, 1993 the Shoreline District Court denied the motion.[30] On October 29, 1993, Petitioner stipulated to trial on the record consisting of police reports detailing complaints filed by Ms. Egan. He filed a Statement of Defendant on Submittal or Stipulation to Facts. Several police reports were attached to the stipulation, which was reviewed by the Shoreline District Court.[31] The court found Petitioner Yates "guilty" of stalking and sentenced him on February 2, 1994 to (a) 365 days in jail with 355 days suspended; (b) a fine of $1,000.00 with $750.00 suspended; (c) probation for 24 months; and (d) no contact with Ms. Egan for 24 months.[32]
On February 3, 1994, Petitioner Yates appealed his conviction to the King County Superior Court.[33] On May 9, 1995 the Honorable Patricia Aitken affirmed the conviction, denying his constitutional challenges and his challenge to the sufficiency of the evidence, stating in the order that:[34]
1. RCW 9A.46.110 (1993), as applied in this case, is not unconstitutionally vague or overbroad; similarly, the statute, as applied to this case, does not violate defendant's due process or equal protection rights. 2. The court finds there was sufficient evidence presented below to support a conviction.; This court does not rely on subsection (4) (i.e. 9A.46.110(4)) in this portion of the decision.[35]
Petitioner Yates appealed that decision to the Court of Appeals, Division I, which consolidated it with State v. Orson H. Lee, Cause Number 35012-9-I.

ORSON HENRY LEE
In 1989 Petitioner Orson Henry Lee's sister, Brenda Lee, had a friend named Becky Gross, who moved into the Lee family residence for two weeks after she left her mother's home.[36] Ms. Gross became wary of Petitioner Lee, then a juvenile (born January 20, 1975), who lived in the Lee family home. He carved Ms. Gross' nickname, "Wild Cat," into his arm with a sharp object and on a piece of metal. A hole was drilled in the wall of the room where she slept at night.[37]
Petitioner Lee repeatedly appeared at Ms. Gross' place of employment, Ivar's Seafood Bar in the Rainer Food Court at Southcenter Mall, Tukwila, almost every other day during *748 the period September 1, 1993 to October 30, 1993.[38] He would purchase drinks from Ivar's and sit in the public seating area for patrons of the various fast food restaurants in the court, including Ivar's. He would stare at Ms. Gross for hours. He wrote a number of notes to her indicating his desire to have contact with her, some of which are excerpted below:
Why are you trying to stay away from me? I would not hurt you. You know that. I will not let anyone hurt you if I'm still your friend.
....
I want to help you if you like it or not. If I have to watch your apartment for you to go to work I will. Don't ignore me [sic] I did nothing to you and I never will. I don't hate you, I have nothing against you, so don't ignore me [sic] you know I would never hurt you. I try to help you and you don't want help. If I have to I will keep you in eyesight all November, I don't want you hurt. Remember when I tattooed Wild Cat on my arm cause I had a crush on you.
....
I'm warning you cause I care about you. Watch what you say to Mary she has a big mouth Don't tell her I told you she said you were sleeping with Terry your Mom's husband.
....
I would never hurt you or let anyone else. Remember I use to have a crush on you, I still have feelings for you. I wish Brenda would chill out. Please watch out I don't want to see get hurt. I will be your bodyguard when Christine gets out, I will shoot her if I need to....
Being fearful that Petitioner Lee would harm her, Ms. Gross repeatedly told him not to contact her and to leave her alone.[39] She refused to serve him at the seafood bar. She felt intimidated and harassed by him. She had someone from her place of work accompany her even to the restroom down the hallway in the mall because she feared Petitioner would try to contact her or harm her.[40] Petitioner repeatedly rode the same public transit bus as Ms. Gross. He would ask her if he could talk to her. She continued to tell him to leave her alone.[41]
Despite Ms. Gross' requests not to contact her, Petitioner Lee continued to contact her. He said he would still do so even though she did not want him to.
On October 11, 1993, Ms. Gross telephoned the Tukwila Police Department. Officer Jeffrey Early responded. Officer Early was given four handwritten notes by Ms. Gross and he took her own handwritten statement. He completed the case report and forwarded it to the detectives. He notified Southcenter Mall Security, a private security company, about Petitioner Lee's behavior towards Ms. Gross.[42]
On October 18, 1993, Officer Brett Wall of Southcenter Mall Security received a call from Ivar's advising that Appellant Lee was back in the mall and following Ms. Gross. Security Guard Wall searched the mall for Petitioner, found him, and issued a "criminal trespass warning" prohibiting him from entering the Southcenter Mall.[43]
On January 5, 1994, Petitioner Lee was charged by the King County Prosecuting Attorney in the King County Superior Court, Juvenile Department, with the crime of "stalking" in violation of RCW 9A.46.020,[44] the Information reading (in confusing grammatical form):

*749 I, Norm Maleng, Prosecuting Attorney for King County in the name and by the authority of the state of Washington, do accuse Orson Henry Lee of the crime of STALKING, committed as follows:
That the respondent, Orson Henry Lee, in King County, Washington, during a period of time intervening between 7 October 1993 and 18 October 1993 without lawful authority intentionally and repeatedly followed another person, to-wit: Becky Elaine Gross, to that person's place of employment, to-wit: Ivars [sic] at Southcenter Mall in Tukwila, and [sic] was intimidated, harassed, or placed in fear that the respondent intended to injure or Becky Elaine Gross' property and the respondent intended to frighten, intimidate, or harass or knew or reasonably should have known that Becky Elaine Gross was afraid, intimidated, and harassed even though the respondent did not intend to place the person in fear or to intimidate or harass Becky Elaine Gross;
Contrary to RCW 9A.46.020, and against the peace and dignity of the state of Washington.[[45]]
Although the offense was designated "stalking" and the Information, in confusing syntax, presumably was intended to be written in the language of the "stalking" statute, former RCW 9A.46.110, it nevertheless cited RCW 9A.46.020,[46] which in 1993 provided, in part, that:
(1) A person is guilty of harassment if:
(a) Without lawful authority, the person knowingly threatens:
(i) To cause bodily injury in the future to the person threatened or to any other person; or
(ii) To cause physical damage to the property of a person other than the actor; or
(iii) To subject the person threatened or any other person to physical confinement or restraint; or
(iv) Maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical or mental health or safety; and
(b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out....
On June 1, 1994, the Information was amended to change the charging period from October 7, 1993 and October 18, 1993 to September 1, 1993 and October 30, 1993, but continued to characterize the offense as "stalking," and to cite only RCW 9A.46.020, the "harassment" statute.[47] On March 15, 1994, Petitioner moved to dismiss the charge, contending the stalking statute was unconstitutionally vague and overbroad.[48] The court, the Honorable Mary Wicks Brucker, denied the motion.[49]
Inasmuch as Petitioner Lee at no time objected to the confusing grammar of the Information or to the erroneous citation of the statute, we conclude that without question he waived any objection he might have been able to raise.
At trial Petitioner Lee argued the term "following" means a physical pursuit of someone, which does not apply to his merely "sitting" in a public place, and that there was no evidence to show he had "followed" his victim.[50] The court denied his motion and entered a formal finding of "guilty" of stalking and sentenced him on July 11, 1994 to (a) 12 months' community supervision; (b) 16 hours' community service; (c) 4 days in jail with 4 days suspended; and (d) have no contact with Ms. Becky Gross. The Court entered findings of fact and conclusions of law on September 30, 1994.[51] Petitioner Lee *750 appealed the decision to the Court of Appeals, Division I, which consolidated it with State v. Brian Yates, Cause Number 36767-6-I.

COURT OF APPEALS OPINION
On June 2, 1996, the Court of Appeals, the Honorable Mary Kay Becker writing, concluded the evidence supported the convictions of both Petitioner Orson H. Lee and Petitioner Brian Yates and that the statute defining the crime of stalking, former RCW 9A.46.110, was not unconstitutionally vague or overbroad, and did not violate constitutional requirements of procedural due process.[52] On June 19, 1996, Petitioners Lee and Yates sought review of that decision by this Court, which granted review of the consolidated cases on December 4, 1996.

DISCUSSION
Petitioner Orson H. Lee's argument before this court was based upon the assumption his "stalking" charge in the King County Juvenile Court was under the stalking statute, former RCW 9A.46.110. The Information actually cited the harassment statute, RCW 9A.46.020. Even in oral argument his counsel declined to argue other than constitutional objections to the stalking statute. We therefore direct our attention only to the stalking statute, former RCW 9A.46.110.
The United States Supreme Court has recognized that states can interpret their own constitutions to provide greater protection for individual rights than the United States Constitution because each state has the sovereign right to adopt in its own constitution individual liberties more expansive than those conferred by the Federal Constitution.[53] When asked to do so, this Court will consider whether Washington's constitution provides greater protection than parallel federal provisions, but only if the argument adequately addresses the principles announced in State v. Gunwall.[54] Absent that, this Court will interpret the Washington constitution coextensively with its parallel federal counterpart.[55] Neither Petitioner Yates nor Petitioner Lee addressed the Gunwall factors. We thus focus on the United States Constitution.[56]
Petitioners contend the stalking statute, former RCW 9A.46.110, is unconstitutionally overbroad because it impacts constitutionally protected conduct. This Court applies federal overbreadth analysis to such challenges.[57] Overbreadth analysis measures how statutes prohibiting conduct fit into the universe of constitutionally protected conduct.[58] A statute is overbroad if it sweeps constitutionally protected free speech within its prohibitions and there is no way to sever its unconstitutional applications.[59] The task then becomes determining whether the statute reaches substantial constitutionally protected conduct.[60]
Criminal statutes require particular scrutiny and may be facially invalid if they "`make unlawful a substantial amount of constitutionally protected conduct ... even if *751 they also have legitimate application.'"[61] A statute regulating behavior and not pure speech will not be overturned unless the overbreadth is both real and substantial in relation to the statute's legitimate sweep.[62] A statute will be overturned only if the court is unable to place a sufficiently limiting construction on a standardless sweep of legislation.[63]
Petitioners argue the statute sweeps within its prohibitions constitutionally protected free speech and the right to travel.[64] They contend the freedom to travel and the right to walk or wander is a First Amendment protected liberty interest. They argue the statute potentially infringes upon a range of First Amendment activities such as political protesting or news gathering. They argue that within the scope of the statute are news reporters, protesters, well-meaning neighbors checking on another's suspicious activities, and concerned citizens or organizations investigating governmental misconduct by following officials in public areas.
Respondent contends the State has a legitimate interest in restraining harmful conduct and may do so under the police powers which promote the health, safety and welfare of the public. Respondent argues the stalking statute should not be construed as limiting ordinary movement (such as walking, strolling, or wandering), but as prohibiting repeated intentional acts of following a person if the intent is to frighten, intimidate or harass, or to the knowledge of an accused, the conduct causes a reasonable sense of fear, intimidation or harassment in the victim. Respondent argues the statute is not overbroad when it regulates oppressive behavior which invades the privacy of another and is not merely an expression of ideas.
The freedom to travel throughout the United States has long been recognized as a basic right under the United States Constitution.[65] Modern development of the doctrine began with Edwards v. California,[66] in which the United States Supreme Court held unconstitutional residence requirements restricting entry of indigents into a state to receive benefits.[67] The Supreme Court in Aptheker v. Secretary of State[68] struck down a federal statute denying passports for travel abroad to members of Communist organizations. The Court in Crandall v. Nevada[69] struck down a Nevada statute taxing persons leaving that state.
These cases all dealt with freedom of movement, that is, the right to travel, as affected by oppressive state action.[70] A state law implicates the right to travel when it actually deters such travel[71] and impeding the travel is its primary objective.[72] There is an acknowledged constitutional right to be free from governmental interference, but the United States Constitution does *752 not create a right for any person to interfere with the rights of other persons.[73]
Petitioners rely upon a footnote in City of Tacoma v. Luvene,[74] which in turn relies upon Papachristou v. City of Jacksonville,[75] for the proposition that walking, strolling and wandering are liberties "within the sensitive First Amendment area." The United States Supreme Court in Papachristou did not state the "right to walk" is a liberty interest, although it did state that walking is an unwritten amenity of life which is not mentioned in the Constitution or the Bill of Rights, but has been partly responsible for giving the people a feeling of independence, self-confidence, and a feeling of creativity.[76] However, Papachristou did not elevate walking, strolling, and wandering to the level of constitutionally guaranteed speech or expressive conduct.
This Court has held that freedom of movement may not be used to impair the individual rights of others.[77] No travel rights of one individual can supersede the constitutional rights of other individuals.[78]
When the purpose of legislation is to promote the health, safety and welfare of the public and bears a reasonable and substantial relationship to that purpose, every presumption must be indulged in favor of constitutionality.[79] In 1985 the Washington State Legislature enacted the Anti-Harassment Act to make "unlawful the repeated invasions of a person's privacy by acts and threats which show a pattern of harassment designed to coerce, intimidate, or humiliate the victim." RCW 9A.46.010. The crime of harassment is defined under former RCW 9A.46.020. This is to be distinguished from the crime of stalking defined under former RCW 9A.46.110, which was then codified under the Anti-Harassment Act.
The United States Supreme Court has recognized the "right of privacy" may be created by specific constitutional guaranties although the "right of privacy" does not exist in any specific provision of the United States Constitution.[80] Article I, section 7 of the Washington Constitution provides, "No person shall be disturbed in [that person's] private affairs, or [that person's] home invaded, without authority of law." This provision focuses on the protection of a citizen's private affairs.[81] Personal rights found in the guaranty of privacy are fundamental to or implicit in the concept of ordered liberty.[82] If the right of privacy offers any protection, that protection must include the right to be left alone.[83]
In the case of stalking, as evidenced by these cases, the State has a legitimate interest in restraining harmful conduct. It may do so under the police powers.[84] Individuals have a constitutional right to move about as long as they are not committing a crime. The stalking statute, former RCW 9A.46.110, does not interfere with one's legitimate freedom of movement or right to travel, but applies to conduct between two or more persons when one wishes to be left alone and to be free of interference by the other. The statute is a reasonable exercise of the police powers in protecting privacy interests of a *753 segment of society from invasive oppressive behavior and harmful conduct. One person's freedom of movement gives way to another person's freedom not to be disturbed.
A statute which regulates behavior will not be overturned unless the overbreadth is both real and substantial.[85] The stalking statute, former RCW 9A.46.110, and its subsequently amended version, is not unconstitutional because it does not intrude upon constitutionally protected behavior.
Petitioner Yates contends the stalking statute is unconstitutionally vague because the term "without lawful authority" is too vague to be understood by persons of common intelligence. He argues the Court of Appeals erroneously held that "persons of common intelligence" do not have to guess at the meaning of the term "without lawful authority" which is located in "readily ascertainable sources of law." Petitioner Yates contends there is no statutory authority to explain who has a right to follow another person. He simply argues he has the "authority of law" to follow someone because the common law recognizes his right to do so. This is without merit.
Petitioner Lee contends the stalking statute is unconstitutionally vague because the term "follows" is too vague to be understood by persons of common intelligence. He argues the statute does not apply at any rate to him because he was merely sitting in a public place inside a shopping mall. Actually he was not charged under the stalking statute, RCW 9A.46.110, but was charged under the harassment statute, former RCW 9A.46.220, now codified under RCW 10.14. At any rate, his argument is without merit.
Respondent contends this court in State v. Smith[86] and State v. Worrell[87] has held the term "without lawful authority" in a harassment statute did not render the statute void for vagueness either for failure to give adequate notice of the proscribed conduct or for failure to provide minimum guidelines for enforcement.
A vagueness challenge seeks to vindicate two principles of due process: the need to define prohibited conduct with sufficient specificity to put citizens on notice of what conduct they must avoid, and the need to prevent arbitrary and discriminatory law enforcement.[88] A statute is void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its applicability.[89] The context of the entire statute is considered by the court to determine a sensible, meaningful, and practical interpretation.[90] The fact that some terms in a statute are not defined does not mean the enactment is unconstitutionally vague.[91] Vagueness challenges to statutes which do not involve First Amendment rights are to be evaluated under the particular facts of each case.[92] A defendant whose conduct clearly fits within the proscriptions of a statute does not have standing to challenge the constitutionality of that statute for vagueness.[93]
Petitioner Yates maintained visual and physical proximity to Ms. Egan for several months in his pursuit of unwanted contact with her, despite her protestations and despite court orders directing him to have no contact with her. His efforts were neither unintentional nor accidental. They were deliberate and intentional acts which seriously interfered with the right of his victim to be left alone.

*754 SUMMARY AND CONCLUSION

We conclude that the stalking statute, former RCW 9A.46.110, is not void for vagueness, is not unconstitutionally overbroad and does not violate constitutional requirements of due process. We also conclude the evidence in both cases was sufficient to justify the convictions.
We affirm the Court of Appeals in its affirmance of the decisions of the King County Superior Court in the cases of Orson Henry Lee and Brian Edward Yates.
DURHAM, C.J., and DOLLIVER, GUY, JOHNSON and TALMADGE, JJ., concur.
ALEXANDER, Justice. (concurring in the result).
I write separately to emphasize that while I concur with the result reached by the majority, inasmuch as I find that the stalking statute at issue is constitutional and that the appellants were properly convicted under it, I share the dissent's concern that the majority's formulation of the right to privacy is overbroad. The majority implies that article I, section 7 of the Washington Constitution protects a person against private action such as stalking. However, "[v]iolation of a right to privacy under this provision turns on whether the State has unreasonably intruded into a person's `private affairs.'" State v. Goucher, 124 Wash.2d 778, 782, 881 P.2d 210 (1994) (emphasis added) (citing State v. Boland, 115 Wash.2d 571, 577, 800 P.2d 1112 (1990); State v. Myrick, 102 Wash.2d 506, 510, 688 P.2d 151 (1984)). Accordingly, "[t]he constitutional right to privacy is implicated only if the actors were functioning as agents or instrumentalities of the State." State v. Farmer, 80 Wash.App. 795, 800, 911 P.2d 1030 (1996) (emphasis added) (citing State v. Walter, 66 Wash.App. 862, 866, 833 P.2d 440 (1992), review denied, 121 Wash.2d 1033, 856 P.2d 383 (1993)).
In my view, in sum, the majority's expansive reading of the right to privacy is unnecessary to the disposition of this case. I otherwise concur, however, with the majority's decision.
MADSEN, Justice (dissenting).
In response to inadequate civil and criminal remedies for stalking victims, states have recently enacted anti-stalking legislation aimed at proscribing certain types of behaviors that previously were not prohibited under existing criminal laws. In particular, traditional criminal remedies were inadequate since stalkers would typically engage in behaviors that were threatening to the victim, but which would not, absent an anti-stalking statute, rise to the level of a criminal violation. Criminal remedies were generally available only if the stalker's behavior rose to the level of criminal assault. Anti-stalking legislation was designed to give victims legal means of protecting themselves prior to the actual infliction of physical harm or violence. These statutes were designed to prevent future harms by giving police the authority to intervene and to make an arrest whenever an offender displays any stalking behavior. See Beth Bjerregaard, Stalking and the First Amendment: A Constitutional Analysis of State Stalking Laws, 32 Crim. L. Bull. 307, 307-311 (1996). The need for such statutes is made abundantly clear by the behavior displayed in this case.
Since California enacted the first anti-stalking legislation in 1990, 49 states, including Washington and the District of Columbia, have enacted anti-stalking statutes. In drafting such legislation, states have had to maintain a delicate balance between protecting constitutional freedoms and providing adequate protection for their citizens from criminal behavior.
Washington's former anti-stalking law fails to achieve that necessary constitutional balance because it criminalizes behavior in vague or undefined terms. Although the majority has failed to recognize the problems of the former stalking law, the Legislature has seen and corrected those problems in the current version of the statute. Unfortunately, since Lee and Yates were convicted under the former, defective statute, I believe they should receive the benefit of trial under a constitutionally sufficient statute and therefore, respectfully dissent.
I write to emphasize my disagreement with the majority's reasoning that citizens have a constitutionally protected "right to *755 privacy" against the actions of other citizens. The right to privacy protects us from actions of the government.
The majority seems to claim that these defendants have invaded a constitutionally guaranteed "right of privacy" otherwise enjoyed by their victims, relying upon article I, section 7 of the Washington Constitution ("No person shall be disturbed in his private affairs, or his home invaded, without authority of law") as well as a right to privacy inferred from the federal constitution in Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) and Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). The majority's conclusions, however, are a stark departure from established state and federal constitutional jurisprudence.
The cases cited by the majority construe the rights guaranteed under the federal constitution to limit government action, not to delineate legal rights between private persons. Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 613-14, 109 S.Ct. 1402, 1411, 103 L.Ed.2d 639 (1989) (the federal constitution protects against certain arbitrary and invasive acts by officers of the government or those acting at their direction); Blum v. Yaretsky, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (acts of private individuals are beyond the scope of "state action" and are thus beyond the protections of the federal constitution); Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (striking down state prohibition of abortion); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (striking down state prohibition of contraceptives); Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161, 3 A.L.R.2d 441 (1948) (the federal constitution "erects no shield against merely private conduct, however discriminatory or wrongful.")
Additionally, this court has recognized that a "[v]iolation of a right of privacy under [article I, section 7 of the Washington Constitution] turns on whether the State has unreasonably intruded into a person's `private affairs.'" State v. Goucher, 124 Wash.2d 778, 782, 881 P.2d 210 (1994) (emphasis added) (quoting State v. Boland, 115 Wash.2d 571, 577, 800 P.2d 1112 (1990); State v. Myrick, 102 Wash.2d 506, 510, 688 P.2d 151 (1984)); see also Roe v. Quality Transp. Servs., 67 Wash.App. 604, 608, 838 P.2d 128 (1992) (the right to privacy guaranteed in the Washington Constitution is "a restraint on government and not a restraint on private individuals"). The majority cites State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986), to support its claim that one has a constitutional right not to feel intimidated, frightened, or harassed by another. Majority at 752. However, Gunwall involved police action against a private citizen, not the actions of one private citizen against another.
Thus, it is well established that state and federal constitutional protections protect citizens from state action, not private action. The majority's analysis leads to an unprecedented result whereby private citizens could sue other private citizens for constitutional violations. To extend constitutional protections to private actions would be an unsupported and radical departure from established constitutional doctrine. I find the reasoning of the majority in this regard to be without basis in American constitutional jurisprudence and therefore I must voice my disagreement.
SANDERS, J., concurs.
NOTES
[1] RCW 9A.46.110 (1992). Although Petitioner Orson H. Lee was charged under the harassment statute, RCW 9A.46.020, the offense was designated as "stalking." Appellant did not question the correct designation of the statute. All parties, including the courts, referred to the offense as "stalking."
[2] 82 Wash.App. 298, 917 P.2d 159 (1996).
[3] Transcript of Shoreline District Court proceedings, 174 and 195.
[4] Transcript of Shoreline District Court proceedings, 182; King County Police Incident Report, April 2, 1993, Clerk's Papers at 94; King County Police Incident Report, April 7, 1993, Clerk's Papers at 99.
[5] Mountlake Terrace Police Department Incident Report, January 5, 1993, Clerk's Papers at 105-106.
[6] Mountlake Terrace Police Department Incident Report, January 5, 1993, Clerk's Papers at 104.
[7] Id. at 69, 71, 72.
[8] There is no record of such a restraining order in the documents before this court. A King County Police Department Incident Report dated January 13, 1993 mentions Ms. Egan had a temporary court order # XX-XXXXXXX signed by County Clerk Kay D. Anderson, which had not been served on Petitioner Yates. Clerk's Papers at 39, 310. A Temporary Restraining Order # XX-XXXXXXX was filed March 23, 1993 and served on Petitioner on April 6, 1993.
[9] King County Police Department Incident Report, January 13, 1993, Clerk's Papers at 72.
[10] Id.
[11] Id. at 72.
[12] Id. at 72.
[13] Id. at 71.
[14] Mountlake Terrace Police Department Incident Report, March 17, 1993, Clerk's Papers at 73-74.
[15] Lynnwood Police Department Incident Report, March 23, 1993, Clerk's Papers at 75-77.
[16] Clerk's Papers at 359. The service box is checked on the order, but there is no record of actual service.
[17] King County Police Department Incident Report, April 2, 1993, Clerk's Papers at 91-96.
[18] Reissuance of Temporary Order from Domestic Violence, Commissioner Joan E. Sullivan, April 6, 1993, Clerk's Papers at 115.
[19] Clerk's Papers at 361; King County Police Department Incident Report, April 7, 1993, Clerk's Papers at 97-99.
[20] Mountlake Terrace Police Department Incident Report, April 11, 1993, Clerk's Papers at 79.
[21] Id. at 78-80.
[22] King County Police Department Incident Report, April 19, 1993, Clerk's Papers at 81-84.
[23] Clerk's Papers at 66, 363.
[24] King County Police Department Incident Report, April 24, 1993, Clerk's Papers at 85-86.
[25] Clerk's Papers at 65.
[26] The State originally charged Petitioner with five incidents of stalking. See Clerk's Papers at 28, 37, 90, 91, 97. On July 28, 1993 Judge Robert A. Wacker granted the State's motion to consolidate all five charges into one count under cause number, L00005119. CP at 9.
[27] January 13, 1993 Complaint for Stalking, Count I. Clerk's Papers at 64, 117. This complaint was amended April 2, 1993. However, there is no record the amended complaint was ever filed. See Clerk's Papers at 90.
[28] The "stalking" statute was amended in 1994 and is now codified in more expansive language, although substantially the same.
[29] Id. at 45-63.
[30] Id. at 9 (docket) and at 222-23 (transcript).
[31] Id. at 27-43.
[32] Id. at 13-15.
[33] Id. at 11.
[34] Id. at 366.
[35] Id. at 368.
[36] Transcript of proceedings, State v. Lee, King County Juvenile Court, Clerk's Papers at 18.
[37] Id. at 18-19, 32-33.
[38] Id. at 22.
[39] Id. at 23.
[40] Id. at 23-24.
[41] Id. at 25.
[42] Id. at 53-55.
[43] Id. at 56-59. The record does not indicate whether this warning was verbal or in writing.
[44] The complaint cited the harassment statute. However, the Judgment and Sentence signed by the trial court on July 11, 1994 merely referred to Count I, Stalking, but made no reference to the statute. Clerk's Papers at 31-33. Petitioner did not object to citation of the harassment statute and throughout this proceeding argued the invalidity of the stalking statute, RCW 9A.46.110, even though it was not cited in the Information.
[45] Clerk's Papers at 1.
[46] In 1995 the statute was subsumed under RCW 10.14.
[47] Id. at 30.
[48] Id. at 3-27.
[49] Id. at 28-29; Transcript of the State v. Lee, King County Juvenile Court proceedings at 14-16.
[50] Transcript of State v. Lee, King County Juvenile Court proceedings at 69-70.
[51] Clerk's papers at 28-29; Transcript of State v. Lee, King County Juvenile Court proceedings at 95-99.
[52] State v. Orson H. Lee and State v. Brian Yates (consolidated cases), 82 Wash.App. 298, 917 P.2d 159 (1996).
[53] State v. Gunwall, 106 Wash.2d 54, 59, 720 P.2d 808, 76 A.L.R.4th 517(1986).
[54] State v. Furman, 122 Wash.2d 440, 448, 858 P.2d 1092 (1993); See State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986).
[55] Nelson v. McClatchy Newspapers, 131 Wash.2d 523, 936 P.2d 1123 (1997).
[56] State v. Furman, 122 Wash.2d 440, 448, 858 P.2d 1092 (1993); See State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986).
[57] City of Seattle v. Huff, 111 Wash.2d 923, 767 P.2d 572 (1989).
[58] City of Tacoma v. Luvene, 118 Wash.2d 826, 839, 827 P.2d 1374 (1992).
[59] State v. Talley, 122 Wash.2d 192, 210, 858 P.2d 217 (1993); City of Seattle v. Huff, 111 Wash.2d 923, 925, 767 P.2d 572 (1989); See Thornhill v. Alabama, 310 U.S. 88, 97, 60 S.Ct. 736, 741-42, 84 L.Ed. 1093 (1940).
[60] City of Seattle v. Webster, 115 Wash.2d 635, 802 P.2d 1333, 7 A.L.R.5th 1100 (1990); City of Seattle v. Huff, 111 Wash.2d 923, 925, 767 P.2d 572 (1989); See City of Houston v. Hill, 482 U.S. 451, 459, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398 (1987).
[61] City of Seattle v. Huff, 111 Wash.2d 923, 925, 767 P.2d 572 (1989) (quoting City of Houston v. Hill, 482 U.S. 451, 459, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398 (1987)).
[62] Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).
[63] City of Tacoma v. Luvene, 118 Wash.2d 826, 840, 827 P.2d 1374 (1992).
[64] Thornhill v. Alabama, 310 U.S. 88, 97, 60 S.Ct. 736, 741-42, 84 L.Ed. 1093 (1940); City of Seattle v. Eze, 111 Wash.2d 22, 31, 759 P.2d 366, 78 A.L.R.4th 1115 (1988); City of Seattle v. Webster, 115 Wash.2d 635, 641, 802 P.2d 1333, 7 A.L.R. 5th 1100 (1990).
[65] Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).
[66] 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941).
[67] See Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).
[68] 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); See Kent v. Dulles, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958).
[69] 6 Wall. 35, 73 U.S. 35, 18 L.Ed. 745 (1867).
[70] United States v. Guest, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966).
[71] See Crandall v. Nevada, 6 Wall. 35, 73 U.S. 35, 18 L.Ed. 745 (1867); See Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).
[72] Zobel v. Williams, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982).
[73] United States v. Guest, 383 U.S. 745, 768, 86 S.Ct. 1170, 1183, 16 L.Ed.2d 239 (1966).
[74] 118 Wash.2d 826, 827 P.2d 1374 (1992).
[75] 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).
[76] Id. at 164, 92 S.Ct. at 844.
[77] Eggert v. City of Seattle, 81 Wash.2d 840, 505 P.2d 801 (1973).
[78] Id.
[79] City of Seattle v. Montana, 129 Wash.2d 583, 592, 919 P.2d 1218 (1996); See Duckworth v. City of Bonney Lake, 91 Wash.2d 19, 586 P.2d 860 (1978).
[80] Paul v. Davis, 424 U.S. 693, 712-713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976).
[81] State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986).
[82] Id. at 713, 96 S.Ct. at 1166.
[83] Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); See Griswold v. Connecticut, 381 U.S. 479, 494, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965) (Goldberg, J., concurring) (Justice Brandeis characterized "the right to be let alone" as "the right most valued by civilized" persons.)
[84] Seattle v. Hill, 72 Wash.2d 786, 797, 435 P.2d 692 (1967).
[85] Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).
[86] 111 Wash.2d 1, 759 P.2d 372 (1988).
[87] 111 Wash.2d 537, 761 P.2d 56 (1988).
[88] City of Tacoma v. Luvene, 118 Wash.2d 826, 827 P.2d 1374 (1992); See City of Seattle v. Webster, 115 Wash.2d 635, 802 P.2d 1333 (1990).
[89] City of Spokane v. Douglass, 115 Wash.2d 171, 177, 795 P.2d 693 (1990).
[90] Id. at 180, 795 P.2d 693.
[91] Id. at 180, 795 P.2d 693.
[92] Maynard v. Cartwright, 486 U.S. 356, 361, 108 S.Ct. 1853, 1857, 100 L.Ed.2d 372 (1988).
[93] State v. Hegge, 89 Wash.2d 584, 589, 574 P.2d 386 (1978).