FILED
COURT OF APPEALS
DIVISION II

2013 DEC -3 AM 9: 20

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43746-5-II |
| Respondent, | PUBLISHED OPINION |
| v. | |
| JONATHAN RYAN CLAPPER, | |
| Appellant. | |

BJORGEN, J. — A jury found corrections officer Jonathan Ryan Clapper guilty of first degree custodial sexual misconduct. Clapper appeals his conviction, asserting that the custodial misconduct statute, RCW 9A.44.160, is unconstitutionally vague because an ordinary person cannot determine whether the statute applies to a corrections officer who had sexual intercourse with a prison inmate. Holding that an ordinary person would clearly understand that the statute applies to a corrections officer, we conclude that the statute is not unconstitutionally vague and affirm the conviction.

## FACTS

In 2008, while working as a corrections officer at the Washington Corrections Center for Women, Clapper saw two inmates, LR and RL,[1] trying to take items from a locked canteen cart in the prison laundry room. When LR and RL saw Clapper, they asked him not to report the

---

[1] Pursuant to RAP 3.4 we refer to the victims by their initials to maintain confidentiality.

incident. Clapper agreed not to report the incident if LR and RL returned the items they had taken from the cart.

Several days later, Clapper told RL, "You and [LR] are two beautiful women; you're lucky I don't bribe you." Report of Proceedings (RP) at 234. That same day, Clapper approached LR from behind while she was working alone in the prison laundry room and sexually assaulted her. Afterwards, Clapper told her not to tell anyone about it, including RL. The State charged Clapper with first degree custodial sexual misconduct.

Before trial, Clapper moved to dismiss his charge, asserting that the custodial sexual misconduct statute was unconstitutionally vague.[2] The trial court denied his motion to dismiss. At the close of the State's case and at sentencing, Clapper again moved to dismiss his charge on the same basis, which motions the trial court denied.

At trial, the parties stipulated that Clapper had sexual intercourse with LR while Clapper was a corrections officer and LR was an inmate. Jennifer Piukkula, a Department of Corrections (Department) investigator and former corrections officer, testified about Clapper's job duties as a corrections officer. Piukkula testified that corrections officers monitor offenders on a daily basis, supervise offenders' movement in the prison, conduct cell searches, and conduct pat-downs of offenders to assure that they are not transporting contraband. Piukkula stated that although corrections officers conduct cell searches, they must be first authorized by a unit sergeant. Piukkula further testified that corrections officers are trained in restraint techniques and, if the need arises, "are . . . expected to use force to restrain an inmate." RP at 206.

---

[2] Clapper also moved before trial to dismiss his charge on the basis that the statute violated his privacy right under article I, section 7, of the state constitution, which motion the trial court denied. He does not reassert this argument on appeal and we do not address it.

2

Piukkula also testified that anyone working at the correctional facility, including corrections officers, can "infract" an inmate. RP at 195. She stated that an infraction is "basically an on-site adjustment toward [an offender's] behavior." RP at 196. Depending on the severity of an offender's behavior, a corrections officer may choose to give the offender only a verbal warning. For conduct considered a major infraction, however, the corrections officer must write a major infraction report. Following a unit sergeant's review of the infraction report and a formal due process hearing, an infraction may result in discipline, including the loss of privileges, time in segregation, or the loss of good time credit.

LR testified that she believed corrections officers monitored the activities of inmates and that Clapper had monitored her activities while she worked in the prison laundry room. LR also believed that she could be placed in segregation if a corrections officer caught her breaking a rule. LR stated that she did not immediately report Clapper's conduct because she "didn't want to get in trouble." RP at 157. RL testified that she had begged Clapper to not report her for stealing items from the canteen cart because she feared being placed in segregation and losing her privileges.

The jury returned a verdict finding Clapper guilty of first degree custodial sexual misconduct. Clapper timely appeals.

ANALYSIS

Clapper was convicted of violating RCW 9A.44.160, which provides in relevant part:

> (1) A person is guilty of custodial sexual misconduct in the first degree when the person has sexual intercourse with another person:
> (a) When:
> (i) The victim is a resident of a state, county, or city adult or juvenile correctional facility . . . and
> (ii) The perpetrator is an employee or contract personnel of a correctional agency and the perpetrator has, or the victim reasonably believes the perpetrator has, the ability to influence the terms, conditions, length, or fact of incarceration or correctional supervision.
> . . .
> (2) Consent of the victim is not a defense to a prosecution under this section.

Clapper asserts that this statute is unconstitutionally vague because an ordinary person could not determine whether the phrase "the ability to influence the terms, conditions, length, or fact of incarceration or correctional supervision" applies to a person working as a corrections officer in a state correctional facility. Br. of Appellant at 7. We disagree.

The due process vagueness doctrine under the Fourteenth Amendment to the United States Constitution and article I, section 3 of the state constitution requires that citizens have fair warning of proscribed conduct. *State v. Bahl*, 164 Wn.2d 739, 752, 193 P.3d 678 (2008). "A statute is unconstitutionally vague if it '(1) . . . does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) . . . does not provide ascertainable standards of guilt to protect against arbitrary enforcement.'" *Bahl*, 164 Wn.2d at 752-53 (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)). If either requirement is not satisfied, the statute is unconstitutionally vague. *Bahl*, 164 Wn.2d at 753. Clapper's challenge rests only on the first of these requirements. He makes no argument that the statute lacks ascertainable standards to protect against arbitrary enforcement.

We presume that a statute is constitutional and the party challenging a statute for vagueness carries the burden of proving its unconstitutionality. *State v. Halstien*, 122 Wn.2d 109, 118, 857 P.2d 270 (1993). A statute "is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct." *City of Seattle v. Eze*, 111 Wn.2d 22, 27, 759 P.2d 366 (1988). Additionally, a statute is not unconstitutionally vague merely because some terms in the statute are undefined. *State v. Lee*, 135 Wn.2d 369, 393, 957 P.2d 741 (1998). When the legislature does not define a statutory term, we may rely on the dictionary definition to ascertain its meaning. *State v. Sullivan*, 143 Wn.2d 162, 175, 19 P.3d 1012 (2001).

Where, as here, a vagueness challenge to a statute does not involve First Amendment rights, we evaluate the challenge under the particular facts of the case. *Lee*, 135 Wn.2d at 393. We review the constitutionality of a statute de novo. *State v. Abrams*, 163 Wn.2d 277, 282, 178 P.3d 1021 (2008).

As noted, Clapper asserts that RCW 9A.44.160 is unconstitutionally vague because an ordinary person could not determine whether the term "[t]he ability to influence the terms, conditions, length, or fact of incarceration or correctional supervision" would bring corrections officers within its scope. Br. of Appellant at 7. He argues that, because a corrections officer in his position lacks authority to directly alter an inmate's "terms, conditions, length, or fact of incarceration" and, instead, may only initiate the disciplinary process by writing an infraction, this statutory language does not give fair warning that he could be subject to a criminal penalty for engaging in sexual intercourse with an inmate. Br. of Appellant at 7.

5

Clapper's argument suffers from a number of flaws. First, as a corrections officer, Clapper had the authority to detain inmates, search their cells, and supervise their activities and the minutiae of their daily lives within the prison. These are all actions that directly affect the conditions of an inmate's incarceration. Further, if we accept Clapper's argument that a corrections officer does not have direct authority to alter an inmate's terms and conditions of confinement, the statute's use of the term "influence" nonetheless defeats his claim. The dictionary definition of "influence" is "to affect or alter the conduct, thought, or character of *by indirect or intangible means,*" or "*to have an effect on* the condition or development of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1160 (2002) (emphasis added). Issuance of an infraction may result in a disciplinary hearing from which the inmate could be subject to a loss of privileges, time in segregation, or loss of good time credits. Thus, a corrections officer's ability to issue an infraction can clearly, even if only indirectly, affect or alter an inmate's terms, conditions, and length of incarceration. The ability to directly influence the conditions of custody through correctional supervision and to indirectly influence them through issuance of an infraction unmistakably fall within the scope of RCW 9A.44.160. Therefore, an ordinary person could determine from the statute's plain terms that it forbids a corrections officer such as Clapper from engaging in sexual intercourse with a prison inmate.

Moreover, Clapper ignores the portion of RCW 9A.44.160(1)(a)(ii) that criminalizes sexual intercourse with an inmate where the inmate "*reasonably believes* the perpetrator has . . . the ability to influence the terms, conditions, length, or fact of incarceration." (Emphasis added.) As just shown, an ordinary person would clearly understand that a corrections officer supervising inmates within a prison has the ability to influence the terms of incarceration. Thus, LR's belief

No. 43746-5-II

that Clapper had that ability was reasonable. For this reason also, the statute transparently prohibited Clapper's conduct.

The statute at issue defines the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed. Therefore, under *Bahl*, 164 Wn.2d at 752-53, Clapper's argument that RCW 9A.44.160 is unconstitutionally vague must be rejected. Accordingly, we affirm the conviction.

BJØRGEN, J.

We concur:

PENOYAR, J.

JOHANSON, A.C.J.