26 P.3d 890 (2001)
144 Wash.2d 197
STATE of Washington, Respondent,
v.
Chris WILLIAMS, Petitioner.
No. 69382-0.
Supreme Court of Washington, En Banc.
Argued December 6, 2000.
Decided June 28, 2001.
*893 Gene M. Grantham, Seattle, Amicus Curiae on Behalf of Washington Association of Criminal Defense Lawyers.
Pamela Beth Loginsky, Olympia, Amicus Curiae on Behalf of Washington Association of Prosecuting Attorneys.
Aaron Hugh Caplan, Seattle, Amicus Curiae on Behalf of American Civil Liberties.
Washington Appellate Project, Gregory Charles Link, Seattle, for Petitioner.
Norm Maleng, King County Prosecutor, Ann Marie Summers, Deputy, Seattle, for Respondent. *891
*892 SANDERS, J.
Chris Williams seeks reversal of the Court of Appeals decision which affirmed his conviction for misdemeanor criminal harassment under former RCW 9A.46.020(1)(a)(i) or (1)(a)(iv) (1992). The primary issue is whether subsection (1)(a)(iv) of the criminal harassment statute is unconstitutionally vague or overbroad because it employs the term "mental health." We conclude this part of the statute does not pass constitutional muster and reverse.

FACTS
Chris Williams was an employee at Sleep Country USA in Kent. On the morning of January 2, 1995, Williams was fired by his manager Michael Cannizzaro. Williams returned to the store at 6:00 p.m. that same day to drop off his uniforms and collect his final paycheck. Cannizzaro told Williams he would not be able to pick up his paycheck until the next scheduled pay day which was January 12.
Williams and a friend returned to the store on January 11 asking the bookkeeper, Sandra Marsh, for Williams' paycheck. Marsh told Williams to speak to Cannizzaro about getting his check early. Williams then approached Cannizzaro and again demanded his check. Cannizzaro told Williams pay day was not until January 12 and he would have to wait until then just like everyone else. Williams argued that the night shift received their paychecks on January 11. Cannizzaro replied this was a special exception and reiterated that Williams would have to wait until the next business day to collect his check.
Williams then shifted his body sideways and put his hand on his hip, stating: "Motherfucker you better give me my check." Clerk's Papers (CP) at 175. Over Williams' shoulder Marsh mouthed the words, "He has a gun." Id. at 177. Cannizzaro was frightened and gave Williams his check. As Williams turned to leave, Cannizzaro saw what he believed was the handle of a gun protruding from Williams' pants. Before exiting the store Williams turned and said, "Don't make me strap your ass." Id. at 179. Williams and his friend then left the store, got in their car, and drove off. Cannizzaro immediately called the police.
Williams was charged with misdemeanor harassment under both former RCW 9A.46.020(1)(a)(i), which pertains to threats of physical injury, and, in the alternative, (1)(a)(iv), which pertains to threats which harm another's "mental health." He was convicted by a jury pursuant to instructions which also listed the elements in the alternative. On appeal the King County Superior Court affirmed. The Court of Appeals granted discretionary review, affirming the conviction in a published opinion, State v. Williams, 98 Wash.App. 765, 991 P.2d 107 (2000), holding the criminal harassment statute is neither overbroad nor unconstitutionally vague. We granted review.

ANALYSIS
Williams asserts the statute under which he was convicted is unconstitutionally vague because it contains no meaningful definition of the term "mental health." We agree.
This criminal harassment statute provides:
(1) A person is guilty of harassment if:

*894 (a) Without lawful authority, the person knowingly threatens:
(i) To cause bodily injury in the future[1] to the person threatened or to any other person; or
. . . .
(iv) Maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical or mental health or safety; and
(b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out....
Former RCW 9A.46.020(1)(a)(i), (1)(a)(iv), (b) (1992) (emphasis added).
City of Bellevue v. Lorang reiterated the test to determine whether a statute is unconstitutionally vague:
"Under the due process clause of the Fourteenth Amendment, a statute is void for vagueness if either: (1) the statute `does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed'; or (2) the statute `does not provide ascertainable standards of guilt to protect against arbitrary enforcement.'"
City of Bellevue v. Lorang, 140 Wash.2d 19, 30, 992 P.2d 496 (2000) (quoting State v. Halstien, 122 Wash.2d 109, 117, 857 P.2d 270 (1993) (quoting City of Spokane v. Douglass, 115 Wash.2d 171, 178, 795 P.2d 693 (1990))).
The purpose of the vagueness doctrine is twofold: "first, to provide citizens with fair warning of what conduct they must avoid; and second, to protect them from arbitrary, ad hoc, or discriminatory law enforcement." Halstien, 122 Wash.2d at 116-17, 857 P.2d 270; Lorang, 140 Wash.2d at 30, 992 P.2d 496 (citing Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)); State v. Lee, 135 Wash.2d 369, 393, 957 P.2d 741 (1998); City of Tacoma v. Luvene, 118 Wash.2d 826, 844, 827 P.2d 1374 (1992). "A statute is unconstitutionally vague if either requirement is not satisfied." Halstien, 122 Wash.2d at 117-18, 857 P.2d 270 (citing Douglass, 115 Wash.2d at 178, 795 P.2d 693). Moreover, "we are especially cautious in the interpretation of vague statutes when First Amendment interests are implicated." Lorang, 140 Wash.2d at 31, 992 P.2d 496.
Williams contends the criminal harassment statute fails both aspects of the vagueness test because the statute does not define the criminal offense in a way a reasonable person would know what conduct is prohibited and because there is no ascertainable standard to prevent arbitrary enforcement.
As Williams correctly observes, the statute does not define the term "mental health." True enough however "The fact that some terms in a statute are not defined does not mean the enactment is unconstitutionally vague." Lee, 135 Wash.2d at 393, 957 P.2d 741. Rather "[a] statute is void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its applicability." Id. (citing Douglass, 115 Wash.2d at 177, 795 P.2d 693).
Williams argues a reasonable person is left to guess at what conduct is prohibited under the "mental health" aspect of this statute. For example, does the statute prohibit a person from making threats which cause others mere irritation or emotional discomfort or does it only prohibit those threats which cause others to suffer a diagnosable mental condition? A plain reading of the statute provides no answer.
Notwithstanding, the Court of Appeals opined the statute "provides the ordinary person with constitutionally-sufficient notice" because it contains the following limitations: (1) it only prohibits acts intended to cause substantial harm to another's mental health; (2) the threat must be knowing and malicious; (3) the threat must be calculated to do substantial harm to another's mental well being; and (4) the fear associated with the threat must be reasonable. Williams, 98 Wash.App. at 775, 991 P.2d 107. The Court of Appeals also concluded these same limitations *895 are "sufficient standards to prevent arbitrary enforcement." Id.
However, these limitations do nothing to cure the problem. As Judge Baker observed in his dissent, the first "limiting factor" begs the question "what is mental health?" Without knowing what is meant by mental health, the requirement that one intentionally commit an act designed to substantially harm the mental health of another does not tell us what that act might be. In like manner, that the act must be committed knowingly or maliciously does nothing to define the nature of the act. Nor does the fact that the threat must be intended to cause harm to "mental health" tell us anything about the meaning of "mental health." Nor does the reasonableness of the listener's fear supply that missing link either.
The state argues by combining the definitions of "mental" and "health" one can conclude "mental health" means "a state whereby one's mind is free from disease or defect and functions normally." Williams, 98 Wash.App. at 773, 991 P.2d 107. Even if we were to adopt this definition as our own we would still be endorsing an inherently subjective standard. In Lorang we noted, "This court has invalidated criminal laws for vagueness when they are overly subjective." Lorang, 140 Wash.2d at 31, 992 P.2d 496. We there observed:
"What is forbidden by the due process clause are criminal statutes that contain no standards and allow police officers, judge, and jury to subjectively decide what conduct the statute proscribes or what conduct will comply with a statute in any given case. Thus ... we struck down statutes containing inherently subjective terms such as loiter or wander, wanders and prowls with unlawful purpose, [and] lawful excuse."
Id. (alteration in original) (quoting State v. Maciolek, 101 Wash.2d 259, 267, 676 P.2d 996 (1984)).
As in Lorang, the statute here offers law enforcement "no guide beyond the subjective impressions of the person responding to a citizen complaint." Lorang, 140 Wash.2d at 31, 992 P.2d 496. Similarly the average citizen has no way of knowing what conduct is prohibited by the statute because each person's perception of what constitutes the mental health of another will differ based on each person's subjective impressions. To avoid this quandary is the very reason the vagueness doctrine exists. We agree this statute is unconstitutionally vague to the extent it references mental health.

OVERBREADTH
Williams also asserts the statute is overbroad and unconstitutional for that reason as well. We reiterated the rule to be applied to overbreadth challenges in Lorang:
"A law is overbroad if it sweeps within its prohibitions constitutionally protected free speech activities. The First Amendment overbreadth doctrine may invalidate a law on its face only if the law is `substantially overbroad.' In determining overbreadth, `a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct.' Criminal statutes require particular scrutiny and may be facially invalid if they `make unlawful a substantial amount of constitutionally protected conduct....' This standard is very high and speech will be protected `"... unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest."'"
Lorang, 140 Wash.2d at 26-27, 992 P.2d 496 (quoting City of Seattle v. Huff, 111 Wash.2d 923, 925, 767 P.2d 572 (1989) (quoting City of Houston v. Hill, 482 U.S. 451, 461, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987))).
We must first determine whether the statute in question reaches a substantial amount of constitutionally protected speech. RCW 9A.46.020 prohibits threats to do an act intended to substantially harm another's physical or mental health. On its face this statute criminalizes a form of pure speech: threats. According to the United States Supreme Court "a statute[,] ... which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind." Watts v. *896 United States, 394 U.S. 705, 707, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969).
Moreover the statute does not purport to regulate speech based upon the manner in which the message is conveyed, rather it seeks to regulate speech based on what is being said. "The First Amendment generally prevents government from proscribing speech or even expressive conduct because of disapproval of the ideas expressed. Content-based regulations are presumptively invalid." R.A.V. v. City of St. Paul, 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) (citations omitted). This is not to suggest every content-based regulation will ultimately be found unconstitutional, rather the Supreme Court has "permitted restrictions upon the content of speech in a few limited areas." Id. at 382-83, 112 S.Ct. 2538. However such exceptions prove the rule. "Even if a category of speech can be burdened as low value speech, the government may not make further content-based discriminations, except for certain narrowly drawn exceptions." Lorang, 140 Wash.2d at 29 & n. 5, 992 P.2d 496 (citing R.A.V., 505 U.S. at 386, 388-89, 112 S.Ct. 2538).
With respect to threats, the Supreme Court has held "[w]hat is a threat must be distinguished from what is constitutionally protected speech." Watts, 394 U.S. at 707, 89 S.Ct. 1399. Robert Watts was convicted of threatening President Lyndon Johnson by publicly declaring at an antiwar rally, "`If they ever make me carry a rifle the first man I want to get in my sights is L.B.J.'" Id. at 706, 89 S.Ct. 1399. The Supreme Court reversed the conviction stating while the nation has an overwhelming interest in protecting the President, laws which criminalize pure speech must nevertheless be "interpreted with the commands of the First Amendment clearly in mind." Id. at 707, 89 S.Ct. 1399. Thus, true threats must be distinguished from threats that constitute protected speech. Id.
A definition of "true threat" has emerged in the wake of Watts. "A `true threat' is a statement made `in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted ... as a serious expression of intention to inflict bodily harm upon or to take the life of [another individual].'" State v. Knowles, 91 Wash.App. 367, 373, 957 P.2d 797 (1998) (alteration in original) (quoting United States v. Khorrami, 895 F.2d 1186, 1192 (7th Cir.1990)).
Washington's criminal harassment statute clearly prohibits true threats: "A person is guilty of harassment if: ... the person knowingly threatens: ... [t]o cause bodily injury in the future to the person threatened or to any other person." Former RCW 9A.46.020(1)(a)(i). However the statute also prohibits those threats which would not properly be characterized as true threats to physical safety because it also prohibits threats "to do any other act which is intended to substantially harm the person threatened ... with respect to his or her ... mental health or safety." RCW 9A.46.020(1)(a)(iv) (emphasis added). The Court of Appeals therefore properly concluded the criminal harassment statute prohibits at least some constitutionally protected speech.
Given that the statute reaches constitutionally protected speech we must determine whether it does so in a way that is unconstitutionally overbroad. Lorang, 140 Wash.2d at 26, 992 P.2d 496. As we stated in Lee, "[c]riminal statutes require particular scrutiny and may be facially invalid if they `"make unlawful a substantial amount of constitutionally protected conduct ... even if they also have legitimate application."'" Lee, 135 Wash.2d at 388, 957 P.2d 741 (quoting Huff, 111 Wash.2d at 925, 767 P.2d 572) (quoting Hill, 482 U.S. at 461, 107 S.Ct. 2502)
Where a statute regulates protected speech we view it with suspicion. "Content-based restrictions on speech are presumptively unconstitutional and are thus subject to strict scrutiny." Collier v. City of Tacoma, 121 Wash.2d 737, 748-49, 854 P.2d 1046 (1993) (citing City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 46-47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); Burson v. Freeman, 504 U.S. 191, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992)). "[T]he burden is on the government to establish that an impairment of a constitutionally protected right is necessary to serve a compelling state interest...." *897 Lorang, 140 Wash.2d at 29-30, 992 P.2d 496.
The state argues because of the slight social value of the speech prohibited by the harassment statute any infringement of such speech is clearly outweighed by the societal interest in order and morality. To support this proposition the state draws our attention to Chaplinsky v. New Hampshire in which the Supreme Court found "fighting words" were not entitled to First Amendment protection because they "are of such slight social value ... that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). However the state's reliance on this case is misplaced. The Supreme Court characterized the language which the government sought to regulate in Chaplinsky as language which, by its very utterance, inflicts injury or incites an immediate breach of the peace. Id. This is not necessarily the case with all language prohibited by our criminal harassment statute. A distinction must be drawn between "true threats" and protected speech. Watts, 394 U.S. at 708, 89 S.Ct. 1399.
Apparently the state would have us treat all threats as fighting words. This is not consistent with the jurisprudence of the First Amendment. Id. As previously noted even "low value speech" may not be restricted on the basis of its content outside of narrowly drawn exceptions. Lorang, 140 Wash.2d at 29, 992 P.2d 496.
As Amicus in the instant matter correctly observes, "[s]peech is protected, even though it may advocate action which is highly alarming to the target of the communication, unless it fits under the narrow category of a `true threat.'" Br. of Amicus Curiae at 4. Courts have routinely found First Amendment protection extends to speech and conduct that society at large views as vile, politically incorrect, or borne of hate. R.A.V., 505 U.S. 377, 112 S.Ct. 2538 (overturning conviction of a juvenile for burning a cross in violation of a content-based speech ordinance); Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (holding statements made at a Ku Klux Klan rally advocating violence against blacks and Jews were protected speech); N.A.A.C.P. v. Claiborne Hardware Co., 458 U.S. 886, 902, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982) (holding civil rights protestor's admonition to crowd that "`If we catch any of you going in any of them racist stores, we're gonna break your damn neck'" was protected speech (quoting App. to Pet. for Cert. 276)).
Notwithstanding, the state is correct in its observation that speech is unprotected if it is likely to produce a clear and present danger. Suppl. Br. of Resp't at 7. The clear and present danger test was originally promulgated by the Supreme Court in Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919). There Justice Holmes reasoned, "The question in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent." Schenck, 249 U.S. at 52, 39 S.Ct. 247.
While the clear and present danger test has evolved since its inception in 1919, the underlying theory has not. The Brandenburg Court asserted its commitment to the proposition "that the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." Brandenburg, 395 U.S. at 447, 89 S.Ct. 1827. Thus, for purposes of clear and present danger analysis, the important question is not whether the speech which a statute purports to regulate is "low value" or offensive or inflammatory, but rather whether the speech is likely to produce imminent lawlessness. Since RCW 9A.46.020(1)(a)(iv) prohibits protected speech, it must be strictly scrutinized.
The state asserts "[p]rotecting private citizens from malicious threats of substantial harm to physical or mental health is a compelling state interest." State's Resp. to Br. of Amicus Curiae at 2. However simply claiming the statute satisfies *898 a compelling state interest does not make it so. The state presents no evidence or argument that the harassment statute is necessary to allay some clear and present danger of imminent lawlessness. Further, as the state concedes, the legislative findings relating to the criminal harassment statute specifically state: "the prevention of serious, personal harassment is an important government objective." RCW 9A.46.010 (emphasis added). This is facially insufficient. "If a statute regulates speech based on its content, it must be narrowly tailored to promote a compelling Government interest." United States v. Playboy Entm't Group, Inc., 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000) (emphasis added). The distinction must not be an empty exercise in semantics; strict scrutiny requires a statute be narrowly tailored to serve a compelling state interest, whereas intermediate scrutiny requires the state need only prove a statute is substantially related to an important government interest.
As recently as last year we found a Bellevue criminal harassment statute unconstitutional because it impermissibly reached protected speech. We observed, "Bellevue submitted no evidence or argument that forbidding [the protected speech] is necessary to prevent any clear and present danger." Lorang, 140 Wash.2d at 29, 992 P.2d 496. Consequently we determined the statute was overbroad and could not pass constitutional muster. Id. at 30, 992 P.2d 496. Similarly the state here has neither shown that the criminal harassment statute is necessary to promote a compelling government interest nor that the statute is narrowly tailored to achieve that purpose.

SUFFICIENCY OF EVIDENCE
Finally Williams asserts there was insufficient evidence to support his conviction under former RCW 9A.46.020(1)(a)(i) which prohibited threats to cause bodily injury in the future. When reviewing a challenge to the sufficiency of evidence we view the evidence in the light most favorable to the state and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980). As Williams was leaving the store he turned to Cannizzaro and said, "Don't make me strap your ass." Considering this in the light most favorable to the state, a rational trier of fact could possibly conclude this statement communicated Williams' willingness to return and cause bodily harm to Cannizzaro in the future should Cannizzaro take action against him. This was enough to send the case to the jury.

CONCLUSION
RCW 9A.46.020(1)(a)(iv) is unconstitutionally vague to the extent "mental health" is referenced. Both law enforcement and the public were left to speculate as to what conduct was prohibited. Moreover, use of the term is unconstitutionally overbroad insofar as it restricts constitutionally protected speech, subjecting it to a strict scrutiny test it fails to meet. We therefore find the term "mental health" in RCW 9A.46.020(1)(a)(iv) renders the statute both unconstitutionally vague and overbroad.
However, "An act of the legislature is not unconstitutional in its entirety because one or more of its provisions is unconstitutional unless the invalid provisions are unseverable... or unless the elimination of the invalid part would render the remainder of the act incapable of accomplishing the legislative purposes." State v. Anderson, 81 Wash.2d 234, 236, 501 P.2d 184 (1972); Lorang, 140 Wash.2d at 27, 992 P.2d 496. This act contains a severability clause: "If any provision of this act or its application to any person or circumstance is held invalid, the remainder of the act or the application of the provision to other persons or circumstances is not affected." RCW 9A.46.910.
Here there is no need to strike the criminal harassment statute in its entirety. RCW 9A.46.020(1)(a)(i)-(iii) can serve its purpose independently of RCW 9A.46.020(1)(a)(iv). Severing the term "mental" from RCW 9A.46.020(1)(a)(iv) cures the constitutional infirmity.
In terms of remedy, "An appellate court must `ensure that defendants are convicted under the statute as it is subsequently construed and not as it was originally *899 written.'" Lorang, 140 Wash.2d at 33, 992 P.2d 496 (quoting Osborne v. Ohio, 495 U.S. 103, 118, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990)). Since RCW 9A.46.020(1)(a)(iv) is unconstitutional there is a presumption Williams has been prejudiced. Lorang, 140 Wash.2d at 33, 992 P.2d 496. This presumption can be overcome only if the state "can show beyond a reasonable doubt that any reasonable jury would reach the same result without the error." Id.
Here the jury was instructed Williams was guilty of harassment if he threatened: "(a) to cause bodily injury in the future to the person threatened; and/or (b) to maliciously do an act which is intended to substantially harm the person threatened with respect to his physical or mental health or safety." CP at 64 (emphasis added). Choices (a) and (b) for this particular instruction mirror former RCW 9A.46.020(1)(a)(i) and RCW 9A.46.020(1)(a)(iv), respectively. Both the jury verdict form and the Order on Judgment and Sentence demonstrate only that Williams was found guilty of criminal harassment. CP at 25, 16. It is impossible to discern whether the jury found Williams violated former RCW 9A.46.020(1)(a)(i), or RCW 9A.46.020(1)(a)(iv), or both. Consequently the conviction is reversed and the case is remanded for a new trial consistent with this opinion.
ALEXANDER, C.J., SMITH, JOHNSON, and MADSEN, JJ., concur.
IRELAND, J. (dissenting)
The Court is presented with the issue of whether a criminal harassment statute is unconstitutionally vague or overbroad based on the use of the term "mental health." The majority concludes RCW 9A.46.020(1)(a)(iv) is unconstitutional and reverses the conviction and remands the case for a new trial. I respectfully dissent.
A party bringing a constitutional challenge to a statute bears the burden of proving its unconstitutionality beyond a reasonable doubt. State v. Halstien, 122 Wash.2d 109, 118, 857 P.2d 270 (1993). Vagueness is an area of constitutionally protected conduct that continues to receive the highest scrutiny. See, e.g., City of Houston v. Hill 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). Overbreadth analysis is intended to ensure legislative enactments do not prohibit constitutionally protected conduct. City of Tacoma v. Luvene, 118 Wash.2d 826, 827 P.2d 1374 (1992). In the instant case, Williams did not meet his burden of proving the criminal harassment statute unconstitutional beyond a reasonable doubt.
Vague
The majority incorrectly concludes that the statute is unconstitutionally vague because the statute contains no meaningful definition of the term "mental health." Majority at 894.
The statute states in pertinent part:
(1) A person is guilty of harassment if:
(a) Without lawful authority, the person knowingly threatens:
(i) To cause bodily injury immediately or in the future to the person threatened or to any other person; or
. . . .
(iv) Maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical or mental health or safety ...
(b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out. "Words or conduct" includes, in addition to any other form of communication or conduct, the sending of an electronic communication.
RCW 9A.46.020(1)(a)(i), (a)(iv), (b).
The statute proscribes one knowingly threatening to maliciously do an act intended to substantially harm the person threatened with respect to his or her physical or mental health or safety. As used in the statute, "physical" and "mental" are merely modifiers of "health." In their ordinary meaning, physical means pertaining to body; mental means pertaining to the mind.
Mental is merely an adjective like physical modifying health. Health is a term of general *900 use just as is safety. The term "health" is no more indefinable than safety.
In the same way that physical health can be easily understood, so too can mental health. Physical health, like mental health embodies a continuum from perfect health to grave illness or disease. In any event, there was no claim in this case of injury to mental health.
Under the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution, a penal statute is impermissibly vague if: (1) the statute "`does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed';" or (2) the statute "`does not provide ascertainable standards of guilt to protect against arbitrary enforcement.'" Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) (quoting Halstien, 122 Wash.2d at 117, 857 P.2d 270 (quoting City of Spokane v. Douglass, 115 Wash.2d 171, 178, 795 P.2d 693 (1990))); City of Bellevue v. Lorang, 140 Wash.2d 19, 30, 992 P.2d 496 (2000). This test serves two purposes. First, it ensures that citizens receive fair warning of what conduct they must avoid, and, second, it protects citizens from "arbitrary, ad hoc, or discriminatory law enforcement." Halstien, 122 Wash.2d at 117, 857 P.2d 270. A statute is unconstitutionally vague if either requirement is not satisfied. Id.
Any challenge for vagueness must overcome two burdens the presumption of constitutionality and recognition that some degree of vagueness is inherent in any case. First, a statute is presumed to be constitutional unless the presumption is overcome by proof beyond a reasonable doubt. Haley v. Med. Disciplinary Bd., 117 Wash.2d 720, 739, 818 P.2d 1062 (1991); City of Seattle v. Eze, 111 Wash.2d 22, 26, 759 P.2d 366 (1988); State v. Aver, 109 Wash.2d 303, 306-07, 745 P.2d 479 (1987). The party challenging the statute carries the burden of proving its unconstitutionality. Id. Second, "`impossible standards of specificity'" or "`mathematical certainty'" are not required because some degree of vagueness is inherent in any use of language. Halstien, 122 Wash.2d at 117, 857 P.2d 270 (quoting Eze, 111 Wash.2d at 26-27, 759 P.2d 366); Haley, 117 Wash.2d at 740, 818 P.2d 1062. "`[A] statute is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his [or her] actions would be classified as prohibited conduct.'" Halstien, 122 Wash.2d at 118, 857 P.2d 270, (quoting Eze, 111 Wash.2d at 27, 759 P.2d 366).
The majority is correct in stating that "[t]rue enough however `the fact that some terms in a statute are not defined does not mean the enactment is unconstitutionally vague.'" Majority at 894 (quoting State v. Lee, 135 Wash.2d 369, 393, 957 P.2d 741 (1998)). Under the standard of Halstien, the criminal harassment statute is not vague simply because mental health is not defined. Although not defined in the statute, mental health is a term of general use and is easily understood by the average juror. It is recognized that some degree of vagueness is inherent in any use of language and not all terms in the statute must be defined. In addition, Williams has not offered any arguments providing a sufficient basis for finding vagueness beyond a reasonable doubt in the statute.
Williams also argues that the statute does not give proper notice and is inherently subjective because it does not provide guidelines or limitations. The majority incorrectly finds that "these limitations do nothing to cure the problem." Majority at 895.
In applying the vagueness test, the term "physical or mental health" is not vague because, when read in its entirety, it contains specific conditions that collectively give the ordinary citizen adequate notice of what type of threat it prohibits. First, criminality under the criminal harassment statute prohibits only knowing actions by the defendant to cause substantial harm to another's mental or physical health. State v. Williams, 98 Wash.App. 765, 774, 991 P.2d 107 (2000). Second, the threat must be made maliciously. Id. Third, the threat must be of an act that is intended to cause harm. Id. Fourth, the harm intended must be a substantial harm. Id. Finally, the statute does not depend on the victim's subjective reaction as Williams contends, rather, the person threatened *901 must have a reasonable fear that the threat will be carried out. Id.
The statute also overcomes the second part of the vagueness test because it contains ascertainable standards of guilt, which prevent arbitrary enforcement. There are four curbs on arbitrary enforcement that the prosecutor must prove: (1) a "knowing" threat; (2) a "malicious" intent; (3) "substantial harm;" and (4) an objective standard. Furthermore, the burden of proof is the highest standardbeyond a reasonable doubt. These limitations protect against arbitrary, ad hoc, or discriminatory enforcement.
Overbroad
The majority incorrectly finds that this statute criminalizes a form of pure speech, without factoring in the exceptions to pure speech under these facts.
In analyzing a statute for overbreadth, the key inquiry is to determine if a statute reaches a constitutionally protected activity. Halstien, 122 Wash.2d at 122, 857 P.2d 270. "A statute is overbroad if its prohibitions extend beyond proper bounds and violate the First Amendment's protection of free speech." Eze, 111 Wash.2d at 31, 759 P.2d 366.
The criminal harassment statute prohibits threats. See generally City of Seattle v. Ivan, 71 Wash.App. 145, 150, 856 P.2d 1116 (1993). A threat is expressly defined as a communication of the speaker's intent to perform a specific act. Id. The United States Supreme Court has held that "true threats" must be distinguished from constitutionally protected speech. Watts v. United States, 394 U.S. 705, 707, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969). A true threat is a statement made in a context in which a reasonable person would foresee that the statement would be interpreted as a serious expression of an intention to inflict bodily harm upon or to take the life of another individual. United States v. Khorrami, 895 F.2d 1186, 1192 (7th Cir.), cert. denied, 498 U.S. 986, 111 S.Ct. 522, 112 L.Ed.2d 533 (1990). In addition, words that are calculated to produce immediate panic may not be protected speech. Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470 (1919).
The United States Supreme Court has long held that certain classes of speech may be constitutionally unprotected. Chaplinsky v. New Hampshire, 315 U.S. 568, 571-72, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). These certain classes of speech include: lewd and obscene speech, profane speech, libelous speech, and "fighting words." Chaplinsky, 315 U.S. at 572, 62 S.Ct. 766. Such speech is unprotected because its slight social value is clearly outweighed by the social interest in order and morality. Id. In Chaplinsky, the Supreme Court defined "fighting words" as "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." Chaplinsky, 315 U.S. at 572, 62 S.Ct. 766. However, speech does not fall within one of the unprotected categories simply because it is provocative or challenging. Hill, 482 U.S. at 461, 107 S.Ct. 2502. Speech is unprotected only if it is likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance or unrest. Id.
The speech prohibited by the criminal harassment statute does not rise to the level of protected speech. The harassment statute does not prohibit speech that causes mere inconvenience, annoyance or unrest. In order to be convicted of harassment, a person must maliciously threaten to do an act that would intentionally and substantially harm another's physical or mental well being, and must place the person threatened in reasonable fear that the threat will be carried out. RCW 9A.46.020(1)(a)(iv). Due to the requirement that the threat be malicious and put the person in reasonable fear of an intentional act that would cause substantial harm to the person threatened, the speech must present "a clear and present danger of a serious substantive evil"the victim is placed in reasonable fear of substantial harm to his or her physical or mental health. Hill, 482 U.S. at 461, 107 S.Ct. 2502.
There was evidence that Michael Cannizzaro was placed in reasonable fear of substantial harm to his physical or mental health. Chris Williams' actions and statements were beyond public inconvenience, annoyance, or unrest. Although arguably reaching constitutionally *902 protected conduct (speech), that does not end the analysis. The court must next examine whether the statute prohibits a "real and substantial" amount of protected conduct in contrast to the statute's plainly legitimate sweep. Halstien, 122 Wash.2d at 123, 857 P.2d 270. Further, even if a statute is "substantially overbroad," it will not be overturned unless the court is unable to place a sufficiently limiting construction upon the statute. Luvene, 118 Wash.2d at 839-40, 827 P.2d 1374. In addition, if it is possible, a statute must be interpreted in a manner that upholds its constitutionality. Luvene, 118 Wash.2d at 841, 827 P.2d 1374; State v. Dixon, 78 Wash.2d 796, 804, 479 P.2d 931 (1971).
Although Williams argues the criminal harassment statute prohibits a substantial amount of protected speech because it reaches a great deal of intentional and malicious conduct which is nonetheless constitutionally protected, he concedes the statute "does indeed contain limitations." Suppl. Br. of Pet'r at 5. However, he claims, the limitations are "irrelevant in determining whether the statute is substantially overbroad." Id. This clearly is contrary to current law. Luvene, 118 Wash.2d at 839, 827 P.2d 1374. The criminal harassment statute, when read as a whole, does not prohibit a real and substantial amount of protected speech because of its limiting factors.
The limiting factors not only require the state to prove that there was a threat, but also that there was intent, malice, and that the victim's fear was reasonable. Under the criminal harassment statute, a person simply cannot be convicted because he or she makes a threat. The threat must be "malicious," which means "an evil intent, wish, or design to vex, annoy, or injure another person." RCW 9A.04.110(12). Criminal liability will only attach if the person threatened has a reasonable fear that the threat will be carried out. Williams, 98 Wash.App. at 774, 991 P.2d 107.
Application of the overbreadth doctrine is "strong medicine" and should be employed by the court sparingly and only as a last resort. O'Day v. King County, 109 Wash.2d 796, 804, 749 P.2d 142 (1988); Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). The criminal harassment statute contains substantial limiting factors that prevent it from proscribing a real and substantial amount of protected speech and conduct. Williams' arguments concerning overbreadth have no merit and the majority incorrectly gives credence to such an argument.
Sufficiency of the Evidence
The majority is correct in finding that there was enough to send the case to the jury. A rational trier of fact could conclude under either subsection (i) or (iv) that Williams violated the criminal harassment statute.
The Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution protects the accused against conviction except upon proof of each element of a crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); State v. Baeza, 100 Wash.2d 487, 488, 670 P.2d 646 (1983). In reviewing a challenge to the sufficiency of the evidence, the appellate court must view the evidence in the light most favorable to the state. The test is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980); State v. Bradley, 96 Wash.App. 678, 682, 980 P.2d 235 (1999).
In order to constitute the crime of harassment, a threat to cause bodily injury as defined in the former RCW 9A.46.020(1)(a)(i) (1992),[1] there must be a threat of future harm, rather than an immediate harm. State v. Austin, 65 Wash.App. 759, 831 P.2d 747 (1992). In the present case, the threat made by Williams, "don't *903 make me strap your ass," viewed in light of the circumstances and other statements made were a threat of bodily injury in the future. "Strap" when used as a verb, means "to beat with a strap." Webster's New International Dictionary 2256 (3d ed.1971). However as noted by Justice Bridge at oral argument, in street vernacular, "strap your ass" means "to kill with a gun." Williams claims there was insufficient evidence for the jury to conclude that he threatened to cause future bodily injury. However, this statement was made after Williams had obtained his paycheck. Viewing the evidence in the light most favorable to the state, the threat was made to deter Cannizzaro from any future action that might give cause for the defendant to act on his statement.
The jury was instructed as to both alternative elements to commit the crime: a threat to cause bodily injury and a malicious threat to do an act intended to substantially harm the person physically or mentally. Clerk's Papers at 63.
A rational trier of fact could conclude beyond a reasonable doubt that the statement, along with the victim's knowledge that the defendant was armed with a handgun, suggests bodily injury. Therefore, there was sufficient evidence to support Williams' conviction.
Conclusion
Williams' has not met his burden of proof. The majority has incorrectly accepted Williams' argument in attributing his conviction to the use of the term "mental health" in the criminal harassment statute. It is impossible to define every ordinary common term, especially when some degree of vagueness is inherent in any use of language.
For the foregoing reasons, I would uphold the Court of Appeals' decision to affirm the conviction based on the constitutionality of RCW 9A.46.020(1)(a)(iv).
BRIDGE, J., and GUY, J.Pro Tem., concur.
NOTES
[1] In 1997 RCW 9A.46.020(1)(a)(i) was amended to read: "To cause bodily injury immediately or in the future...." Laws of 1997, ch. 105, § 1.
[1] In 1997, RCW 9A.46.020(1)(a)(i) was amended to read, "To cause bodily injury immediately or in the future to the person threatened or to any other person." (emphasis added). Laws of 1997, ch. 105, § 1. Since the amendment took effect two years after the defendant committed the crime, it is inapplicable to the present case.