# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72565-3-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| ASHANTE JAHI GARRETT, | ) ) | |
| Appellant. | ) | FILED: February 29, 2016 |

TRICKEY, J. — Ashante Garrett appeals his convictions of felony harassment, residential burglary, and two counts of felony violation of a court order, all domestic violence offenses. He contends that the State presented insufficient evidence to establish that the victim feared that he would carry out a threat to kill—an essential element of felony harassment. He also claims the court abused its discretion by admitting a court docket into evidence and prosecutorial misconduct in closing argument deprived him of a fair trial. Finally, Garrett claims he was denied the right to be present during a critical stage of the proceedings. Finding no error, we affirm.

## FACTS

Just before midnight on March 7, 2014, police officers went to a residence in the city of Auburn in response to a 911 call reporting domestic violence. Officer Mark Walker was the first officer to arrive. He encountered Amanda Guzman in front of the house, holding her cell phone. She appeared to be "very, very upset" and "inconsolably afraid."[1] Guzman was hugging herself, rocking back and forth, and her breathing was fast and shallow. Her eyes were

---

[1] Report of Proceedings (RP) (July 22, 2014) at 172-73.

constantly "darting" around and before she was able to relate any details to the officer, she appeared to have a panic attack. Eventually, Guzman told Officer Walker she had been assaulted by her boyfriend, Ashante Garrett.

Guzman said that Garrett, who was recently released from jail, accused her of having inappropriate contact with his brother when she talked to him about arranging bail. Garrett then slapped her "upside the head."[2] Guzman said she argued with Garrett and at some point, he dragged her to the back bedroom, threw her on the bed, got on top of her, and applied a great amount of pressure to her chest. Garrett demanded that she give him her money. Guzman told the officer that after she threatened to call the police, Garrett told her, "If I'm going to go to jail, I might as well go to jail for killing you."[3] Garrett left the bedroom and returned, armed with a fork. Guzman said she curled up into a fetal position and tried to shield herself, while Garrett pulled at her arm, made stabbing motions toward her, and continued to threaten her life. After Garrett left the house, Guzman realized he had taken all her money. She ran outside and knocked on Garrett's car window. He threw some money at her and drove away.

Although Guzman provided these details verbally, she refused to sign a written statement because she feared retaliation by Garrett, his family, or friends. Guzman refused medical treatment and police officers did not observe any visible injuries.

---

[2] RP (July 22, 2014) at 206.
[3] RP (July 22, 2014) at 207-08.

2

A few hours later, at about 2:45 in the morning, Guzman again called 911. One of the police officers who had responded to the earlier call returned to her house.

When he arrived, Guzman was "visibly upset," shaking, crying, and had a red, swollen mark on her face that was not there before.[4] It took Guzman approximately an hour to calm down. She told the officer that she had forgotten to lock the back door and Garrett had returned. She said he assaulted her and took her cell phone and $140.

While the officer was still at her home, Guzman spoke to Garrett on the telephone. Garrett eventually agreed to meet Guzman at a hotel in Auburn to return her money and cell phone. Several police officers intercepted Garrett when he arrived at the hotel. Garrett had Guzman's pink cell phone in the console and $280 in cash in his pockets, some of which he admitted belonged to Guzman.

Based on a no contact order entered on March 6, 2014, just days before these incidents, the State charged Garrett with two counts of felony violation of a court order. The State also charged him with residential burglary and felony harassment.

At trial, several police officers testified on behalf of the State and described Guzman's statements and her demeanor when they responded to her 911 calls. Guzman testified pursuant to a material witness warrant, but she largely refused to answer any substantive questions. She repeatedly asked to be

_____

[4] RP (July 22, 2014) at 237, 241.

3

released or taken into custody. The jury convicted Garrett as charged and the court imposed a standard range sentence. Garrett appeals.

ANALYSIS

I. Sufficiency of the Evidence

Garrett first contends that the State failed to present sufficient evidence in support of his felony harassment conviction.

To convict Garrett of felony harassment as charged here, the State had to prove beyond a reasonable doubt that Garrett (1) without lawful authority, (2) knowingly threatened to kill Guzman, and (3) that Garrett's words or conduct placed Guzman in reasonable fear that the threat to kill would be carried out. RCW 9A.46.020(1)(a)(i), (2)(b); State v. Mills, 154 Wn.2d 1, 10-12, 109 P.3d 415 (2005). Garrett claims the State failed to prove the third element: that as a result of his threats, Guzman believed he would kill her.

To satisfy due process in a criminal prosecution, the State must prove each element of the charged crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d. 368 (1970). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We thus evaluate the sufficiency of evidence in support of a conviction by asking whether, viewing the evidence and all reasonable inferences from that evidence in the light most favorable to the State, any rational trier of fact could have found the crime's essential elements beyond a reasonable doubt. Salinas, 119 Wn.2d at 201. Circumstantial and direct evidence are deemed

equally reliable. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact to resolve issues of witness credibility and conflicting testimony. State v. Carver, 113 Wn.2d 591, 604, 781 P.2d 1308 (1989).

Garrett emphasizes the fact that Guzman did not testify that she was afraid that Garrett would kill her. Although Officer Walker testified about Guzman's fearful demeanor, Garrett maintains that Officer Walker did not "tie this fear to an actual threat to kill."[5]

We disagree. In addition to describing Guzman's emotional and terrified state, Officer Walker specifically testified that Guzman told him she feared that Garrett would carry out his threat to kill her. Guzman said she "believed it was a valid threat that he might kill her."[6] Also, Guzman told Officer Walker that while Garrett was threatening her life and making stabbing motions toward her, she "was afraid he might stab her, he might kill her."[7]

There was ample evidence that Guzman was truly afraid and that her fear was directly connected to Garrett's threats. The facts are unlike those in State v. C.G., 150 Wn.2d 604, 607, 80 P.3d 594 (2003), where the vice principal testified only that a student's threat to kill caused him "concern" and that he thought the student "might try to harm him or someone else in the future." Here, the testimony about Guzman's behavior and her statements showed that she greatly feared Garrett and believed him capable of carrying out his threats. Based on the police officers' testimony, a rational trier of fact could find that Garrett's words

---

[5] Appellant's Br. at 11.
[6] RP (July 22, 2014) at 208, 210.
[7] RP (July 22, 2014) at 213.

or conduct placed Guzman in reasonable fear that he would carry out the threat to kill her.

Garrett also suggests that Guzman did not fear being killed because the alleged threat was not an actual threat. According to Garrett, even if he told Guzman he "might as well" kill her, his statement was merely hyperbole or an "off-hand remark," not an actual threat to kill.[8] To the extent Garrett contends the State failed to prove that he made a "true threat," we disagree.

"True threats" are statements "made 'in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life of [another individual].'" State v. Williams, 144 Wn.2d 197, 207-08, 26 P.3d 890 (2001) (alterations in original) (quoting State v. Knowles, 91 Wn. App. 367, 373, 957 P.2d 797 (1998)). "Whether a statement is a true threat or a joke is determined in light of the entire context, and the relevant question is whether a reasonable person in the defendant's place would foresee that in context the listener would interpret the statement as a serious threat or a joke." State v. Kilburn, 151 Wn.2d 36, 46, 84 P.3d 1215 (2004).

According to the evidence, before Garrett threatened to kill Guzman, he hit her, dragged her to the bedroom, and threw her on the bed. Garrett was on top of Guzman and forcefully held her down when he made the threat. He continued this threat while making stabbing motions with a fork. When the police officers arrived, Guzman appeared to be traumatized and terrified. This context is not indicative of a joke or an idle remark. Viewed in the light most favorable to the

---

[8] Appellant's Br. at 11.

State, the evidence was sufficient for the trier of fact to find that Garrett expressed a "true threat."

## II.  ER 404(b) Evidence

Garrett next challenges the trial court's decision to admit as a trial exhibit a certified municipal court docket related to a dismissed case.  The State sought to admit the docket to establish that Garrett had knowledge of the no contact order because the docket indicated that the order was served upon him at a specific court hearing.  Garrett objected, claiming that because there was no assurance that the information reflected in the document was accurate, it was not admissible as a public record.  The court overruled his objection and admitted the docket.  On appeal, Garrett now contends that the docket was prejudicial and inadmissible under ER 404(b), which prevents the admission of prior bad acts "to show action in conformity therewith."

However, "it is well established that '[i]f a specific objection is overruled and the evidence in question is admitted, the appellate court will not reverse on the basis that the evidence should have been excluded under a different rule which could have been, but was not, argued at trial.'" State v. Ferguson, 100 Wn.2d 131, 138, 667 P.2d 68 (1983) (quoting 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 10, at 25 (2d ed.1982) and citing ER 103); see also State v. Korum, 157 Wn.2d 614, 648, 141 P.3d 13 (2006) (foundational objection did not preserve ER 403 objection).

This court may review a claim raised for the first time on appeal if it involves manifest error affecting a constitutional right.  RAP 2.5(a).  But

evidentiary errors under ER 404(b) are not of constitutional magnitude. State v. Gresham, 173 Wn.2d 405, 432-33, 269 P.3d 207 (2012). Because Garrett's objection below is not the basis for his claim on appeal, we do not further consider his argument.[9]

### III. Prosecutorial Misconduct

Garrett next contends that the prosecutor committed misconduct and deprived him of a fair trial by urging the jury to consider evidence outside the record and disparaging defense counsel.

In opening statement, the prosecutor predicted the evidence would show that Garrett made various threatening statements such as, "[h]ave you ever been stabbed a thousand times?"[10] But Guzman did not testify about any of Garrett's statements at trial. And while Officer Walker testified that Garrett verbally threatened Guzman's life while wielding a fork, he did not specifically mention a statement about stabbing 1,000 times. Nevertheless, describing the evidence in closing, the prosecutor reiterated that in addition to telling Guzman he "might as well" kill her, Garrett also threatened to stab her "1,000 times."[11] Defense counsel did not object.

To prevail on a claim of prosecutorial misconduct, a defendant must establish that the prosecutor's conduct was both improper and resulted in prejudice in light of the context of the entire record. State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). A prosecutor has wide latitude to argue

---

[9] In any event, at the State's request, the jury was instructed to consider the document for the limited purposes of whether a court order existed and whether Garrett was aware of it.
[10] RP (July 21, 2014) at 100.
[11] RP (July 23, 2014) at 356.

reasonable inferences from the evidence. Thorgerson, 172 Wn.2d at 448. It is, however, improper for a prosecutor to make arguments based on facts not in evidence. State v. Dhaliwal, 150 Wn.2d 559, 577, 79 P.3d 432 (2003). But where a defendant fails to object to the prosecutor's conduct, he waives his right to later claim that it was misconduct, unless that conduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. State v. Emery, 174 Wn.2d 741, 760-61, 756, 278 P.3d 653 (2012).

Although there was no testimony that Garrett made a specific statement about 1,000 stabbings, Officer Walker's testimony clearly supported the argument that Garrett verbally threatened to kill Guzman while thrusting a fork at her. And before the closing arguments, the trial court instructed the jury as to the difference between evidence and argument:

> The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits. The law is contained in my instructions to you. You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.[12]

If Garrett had objected to the 1,000 stabbings remark, the trial court could have struck the argument from the record and reminded the jury of its instruction to disregard any argument that the evidence did not support. This would have cured any prejudice caused by the comment. Accordingly, Garrett waived his claim of misconduct based on the prosecutor's remark.

Garrett also claims the prosecutor committed misconduct in rebuttal argument by characterizing certain defense arguments as "distraction[s],"

---

[12] Clerk's Papers at 59.

"muddying the water," and "red herring[s]."[13] Defense counsel again made no objections to these remarks.

It is improper for a prosecutor to impugn defense counsel's integrity during closing argument. Thorgerson, 172 Wn.2d at 451. For example, a prosecutor commits misconduct by referring to the defense case as "bogus" or involving "sleight of hand," which implies "wrongful deception or even dishonesty in the context of a court proceeding." Thorgerson, 172 Wn.2d at 451-52; see also State v. Lindsay, 180 Wn.2d 423, 433-34, 326 P.3d 125 (2014) (calling defense argument a "crock" was misconduct).

By characterizing two defense arguments as red herrings or distractions, the prosecutor was asserting that the defense was attempting to direct the jury's attention to unimportant facts. While such descriptions might impugn defense counsel's integrity under certain circumstances, in the context of the argument in this case they did not. Rather, the prosecutor made a legitimate argument that the defense's focus on the police officers' failure to retain Guzman's cell phone and on Guzman's initial statements to 911 dispatch operators was misplaced in light of the testimony and Guzman's later, more detailed statements. The arguments did not imply that defense counsel was deceptive or dishonest, see Lindsay, 180 Wn.2d at 433, and the comments "can fairly be said to focus on the evidence before the jury." Thorgerson, 172 Wn.2d at 451. Garrett's failure to object strongly suggests that the comments did not appear critically prejudicial to the defendant in the context of trial. Garrett fails to establish that the remarks amounted to misconduct or that they were incurably prejudicial.

---

[13] RP (July 23, 2014) at 374-75.

## IV. Right to be Present

Finally, Garrett argues that the trial court excluded him from a material witness hearing and thereby deprived him of his constitutional right to be present at a critical stage of his trial.

The due process clause of the Fourteenth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a defendant the "fundamental right to be present at all critical stages of a trial."[14] Irby, 170 Wn.2d at 880, 884-85; see also United States v. Gagnon, 470 U.S. 522, 526, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985). A critical stage is one in which the defendant's presence in "has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." Snyder v. Massachusetts, 291 U.S. 97, 105-06, 54 S. Ct. 330, 78 L. Ed. 674 (1934), overruled in part on other grounds sub nom Malloy v. Hogan, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964); see also Gagnon, 470 U.S. at 526. The right to be present "'is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence.'" Irby, 170 Wn.2d at 881 (quoting Snyder, 291 U.S. at 107-08).

Because the defendant's presence must be reasonably substantially related to his or her ability to defend, the right is not triggered where "presence would be useless, or the benefit but a shadow." Snyder, 291 U.S. at 106-07. For

---

[14] Although the right to be present originated in the confrontation clause of the Sixth Amendment, the United States Supreme Court has applied the due process clause of the Fourteenth Amendment in situations where defendants are not actually confronting witnesses or evidence against them. See State v. Irby, 170 Wn.2d 874, 880-81, 246 P.3d 796 (2011).

instance, a defendant does not have the right to be present during an in-chambers conference between the court and counsel on legal or ministerial matters, at least to the extent these matters do not require a resolution of disputed facts. In re Pers. Restraint of Pirtle, 136 Wn.2d 467, 484, 965 P.2d 593 (1998); In re Pers. Restraint of Lord, 123 Wn.2d 296, 306, 868 P.2d 835 (1994). Likewise, there is no right to be present at a hearing on a motion for a continuance. In re Pers. Restraint of Benn, 134 Wn.2d 868, 920, 952 P.2d 116 (1998).

Long before trial in this case, Guzman made it clear that she was reluctant to testify in the criminal proceeding against Garrett. After jury selection, but before opening remarks or the presentation of any evidence, the prosecutor informed the court that Guzman would arrive later that morning and she had agreed to testify after being informed that the State would obtain a material witness warrant if she refused. The prosecutor also noted a potential scheduling problem because the defense had not yet had the opportunity to interview Guzman and would likely want to do so before proceeding with opening argument.[15] Defense counsel said he would have to arrange for an investigator to be present or for the interview to be recorded and transcribed. The court then empaneled and instructed the jury. After the jury left the courtroom, the parties and the court agreed to recess and then reconvene to discuss the timing and logistics of Guzman's interview. Garrett was removed from the courtroom.

When the court reconvened, neither Garrett nor the jury were present. Guzman was in the courtroom, having been served with a material witness

---

[15] RP (July 21, 2014) at 78-79.

12

warrant and placed in custody. The prosecutor stated that although Guzman was in custody, he did not believe it was necessary for her to be physically restrained. The parties briefly discussed the timing and location of Guzman's defense interview. The State noted, that having earlier signed the material witness warrant, the court had already made a finding of materiality. The court agreed, stating that "to the extent there's any lack of clarity, I do find she's a material witness."[16] Defense counsel noted for the record that Garrett was not present for the hearing. The parties agreed on a time to reconvene following the interview for opening arguments.

Although Garrett characterizes the hearing about Guzman's interview as a material witness hearing, he provides no reasoned analysis as to why his presence was required. Beyond alluding to possible and unspecified input or suggestions he might have had, he does not explain how the hearing bore a reasonably substantial relationship to his opportunity to defend against the charges. The hearing outside Garrett's presence primarily involved only the logistics of the material witness's interview and testimony; there was no discussion of the substance of the testimony and no new facts were injected into the criminal proceeding. And while the court reiterated its finding of materiality, that finding was not new—it was a required finding for the court to issue the warrant. See CrR 4.10(a). There is no basis to conclude that Garrett's absence from the brief hearing affected his ability to defend or thwarted his ability to obtain a fair and just hearing. Garrett fails to establish that the hearing at issue was a

---

[16] RP (July 21, 2014) at 92.

13

critical stage of the proceedings. Therefore, his absence did not violate his constitutional right to be present.

Affirmed.

_____
Trickey, J

WE CONCUR:

_____          _____