IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35988-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| PETER JOHN ARENDAS, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Peter John Arendas appeals his convictions for two counts of harassment, threats to kill. We affirm Mr. Arendas's convictions but strike imposition of a criminal filing fee and DNA[1] collection fee based on recent statutory changes.

FACTS

Peter Arendas was in custody at the Klickitat County jail when he made statements to third parties involving threats to kill two correctional officers, Tammera Anderson and Tim Curran. The State charged Mr. Arendas with making threats against the two officers

---

[1] Deoxyribonucleic acid.

and Mr. Arendas exercised his right to a jury trial.[2]  At trial, the State presented testimony from the two third parties who heard Mr. Arendas's threats as well as the two correctional officers who were the targets of the threats.

One of the third parties who reported the threats against Officer Anderson was a fellow inmate of Mr. Arendas.  The inmate testified that he was housed near Mr. Arendas at the jail and heard Mr. Arendas yelling that he was going to "stab" Officer Anderson and subject her to bodily harm.  1 Report of Proceedings (RP) (Mar. 21, 2018) at 468.  Mr. Arendas said he would use a piece of metal or a pencil as a shank to stab Officer Anderson multiple times in the neck.  This fellow inmate also stated that Mr. Arendas was always angry.  The inmate said he took Mr. Arendas's threat seriously and wrote a note to Officer Anderson notifying her about Mr. Arendas's statements.  The inmate was provided no benefit or leniency in exchange for his testimony at trial.

Officer Anderson testified that she had nine years' experience as a correctional officer and that she took the threats outlined in the note seriously.  During her testimony, Officer Anderson described her previous interactions with Mr. Arendas.  She recounted

---

[2] The State's amended information charged two counts of harassment by threats to harm and two counts of harassment by threats to kill.  The counts regarding threats to harm were ultimately dismissed on double jeopardy grounds.  U.S. CONST. amend. V; WASH. CONST. art. I, § 9.

an incident when Mr. Arendas was making generalized threats toward law enforcement. Mr. Arendas stated he was "aware that officers wear chest protectors so he wouldn't even aim for the chest, he would aim for the face." 2 RP (Mar. 22, 2018) at 563. Mr. Arendas said "he was going to buy . . . large weapons, large rifles, and hide them in the woods so that officers would not find them so that when he got out he would use them against officers." *Id*. Officer Anderson also recounted a separate incident during which she heard Mr. Arendas chanting and stating that "a female CO's gonna die today, a female CO is gonna die today." *Id*. at 578. Officer Anderson stated that she understood Mr. Arendas's statement as a threat.

The third party who reported the threat against Officer Curran was a Klickitat County jail control board operator. The operator testified that she heard Mr. Arendas talking through the speaker in his jail cell. Mr. Arendas said he would kill Officer Curran, did not care if Officer Curran was in court, and he would go and kill Officer Curran. The operator took Mr. Arendas's statements seriously and informed Officer Curran. The operator explained that she never heard Mr. Arendas specify how he would kill Officer Curran, but saw Mr. Arendas through his cell window making gun gestures with his hand and shooting noises.

Officer Curran testified that he had worked with numerous dangerous people during the course of his eight years as a correctional officer, but he had never before received a threat against his life. Officer Curran testified that he took Mr. Arendas's threats so seriously that he purchased a firearm for protection at home. Officer Curran felt that Mr. Arendas was "very frightening" and "unpredictable." *Id*. at 641-42. He pointed out that Mr. Arendas was in jail for assaulting a police officer and that he had observed Mr. Arendas jumping up and down or celebrating upon hearing news that a Washington police officer had been shot.

The jury found Mr. Arendas guilty of all pending charges and the court issued a judgment and sentence for two felony counts of harassment by threats to kill. Legal financial obligations were imposed against Mr. Arendas, including a $200 criminal filing fee and a $100 DNA collection fee.

Mr. Arendas appeals his judgment and sentence.

## ANALYSIS

*Whether Mr. Arendas's custodial statements qualified as true threats*

In order to prevent criminalizing constitutionally protected speech, a conviction for harassment requires the State to prove the defendant's words constituted a "'true threat.'" *State v. Schaler*, 169 Wn.2d 274, 287-88, 236 P.3d 858 (2010). A "true threat"

4

is "'a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted as a serious expression of intention to inflict bodily harm upon or to take the life of another person.'" *Id.* at 283 (quoting *State v. Williams*, 144 Wn.2d 197, 207-08, 26 P.3d 890 (2001)). A true threat is a serious threat, not said in jest, idle talk, or political argument. *Id.* The nature of a threat "depends on all the facts and circumstances, and it is not proper to limit the inquiry to a literal translation of the words spoken." *State v. C.G.*, 150 Wn.2d 604, 611, 80 P.3d 594 (2003). The State need not prove that the defendant intended to carry out the threat or that the defendant actually knew the threat would be taken seriously. *State v. Trey M.*, 186 Wn.2d 884, 894-95 383 P.3d 474 (2016); *State v. Kilburn*, 151 Wn.2d 36, 48, 84 P.3d 1215 (2004). Instead, true threat analysis turns on how a reasonable person would have understood the defendant's statements. *Trey M.*, 186 Wn.2d at 907.

Mr. Arendas argues the State's evidence was insufficient to prove his statements qualified as true threats. To review this claim, we engage in an independent review of the entire record to ensure a conviction is not a "forbidden intrusion into the field of free expression." *State v. Locke*, 175 Wn. App. 779, 790, 307 P.3d 771 (2013), *review denied*, 179 Wn.2d 1021 (2014). Although this is a special standard of review, our sufficiency analysis still looks to whether the facts, taken in the light most favorable to the State,

5

support the jury's judgment of conviction. *Trey M.*, 186 Wn.2d at 905. We will not conclude the State's evidence was insufficient simply because the jury *could* have interpreted the defendant's statements as protected speech. *See Schaler*, 169 Wn.2d at 289-91.

The evidence here supports the jury's finding of true threats. Mr. Arendas's demeanor and the context of his statements indicated he was not joking or engaged in some sort of political speech. Unlike the facts of *Kilburn*, Mr. Arendas was not giggling or confiding to a friend. Instead, Mr. Arendas was in a custodial setting, where he was being held for assaulting a law enforcement officer. Knowing his statements would be heard by others, Mr. Arendas angrily expressed an intent to use lethal force against two named correctional officers. The threats pertaining to Officer Anderson detailed a method of attack. The threat against Officer Curran was accompanied by hand gestures referencing a firearm. Mr. Arendas's threats were consistent with prior, more generalized, threats, thus suggesting an escalating desire to cause harm. *See Locke*, 175 Wn. App. at 791-92 (escalating nature of threats suggestive of seriousness). Given these circumstances, the jury had sufficient facts to meet the objective standard for true threats, as set forth in our jurisprudence.

*Criminal filing & DNA fees*

Mr. Arendas contends, and the State concedes, that a $200 criminal filing fee and $100 DNA collection fee should be struck from his judgment and sentence because Mr. Arendas is indigent and has been previously convicted of a felony in Washington (and therefore has previously paid the DNA fee). RCW 36.18.020(2)(h); RCW 43.43.7541. We accept this concession and remand for the limited purpose of striking the two aforementioned fees.

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

In his statement of additional grounds for review (SAG), Mr. Arendas contends that several witnesses lied and were not credible at trial, and that numerous reports made by witnesses and entered as exhibits at trial contained no proof or were frivolous. He also asserts that Officer Curran assaulted him after he was sentenced and continues to have contact with him in violation of a court order.

Mr. Arendas's SAG arguments do not merit appellate scrutiny. The Court of Appeals does not make credibility determinations. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). In addition, we cannot review allegations of misconduct that are unsupported by the existing trial record. To the extent Mr. Arendas believes there are facts outside the record to support a challenge to his convictions, his recourse is to file a

7

No. 35988-3-III
*State v. Arendas*

properly supported personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 335,

899 P.2d 1251 (1995).

CONCLUSION

Mr. Arendas's convictions are affirmed. This matter is remanded with instructions

to strike the criminal filing fee and DNA collection fee from Mr. Arendas's judgment and

sentence.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____          _____
Lawrence-Berrey, C.J.          Fearing, J.